COPELAND (CLARK PATENT STEAM & FIRE REGULATOR CO. v.). See Case No. 2,866.

# Case No. 3,209.

## COPELAND v. MEMPHIS & C. R. CO.

### [3 Woods, 651.] [1]

Circuit Court, N. D. Alabama. Oct. Term, 1878.

REMOVAL — CITIZENSHIP OF CORPORATION — CONSTRUCTION OF STATUTES.

1. Several states may, by competent legislation, unite in creating the same corporation, or in combining several pre-existing corporations into one; and one state may, without thereby creating a new corporation, authorize a corporation of another state to carry on business within its territory.

[Cited in Blackburn v. Selma, M. & M. R. Co., Case No. 1,467; Colglazier v. Louisville, N. A. & C. Ry. Co., 22 Fed. 568.]

2. A suit against a corporation was removed from a state to the federal court, on the ground that there was in it a controversy between citizens of different states, the plaintiff being a citizen of the state where the suit was brought. On a motion made by the plaintiff to remand the suit, because both parties were citizens of the same state: *Held*, that the burden of proof was on the corporation to show that it was not a citizen of the same state with the plaintiff.

3. The preamble of a statute is no more than a guide to the intention of the law-maker, and may be resorted to in the construction of the enacting clause, where any controversy exists as to its meaning.

4. The title of an act has generally but little weight in its construction, but in doubtful cases may be resorted to to explain the general purport of the act.

5. It is incumbent on suitors who invoke the jurisdiction of the courts of the United States to bring themselves clearly within that jurisdiction.

6. The act of the legislature of Alabama, approved January 7, 1850, entitled "An act to incorporate the Memphis & Charleston Railroad

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Company." makes said company, within the state of Alabama, an Alabama corporation.

[Cited in Memphis & C. R. Co. v. Alabama, 107 U. S. 581, 2 Sup. Ct. 432.]

Heard on motion of plaintiff [Lizzie Copeland] to remand the cause to the state court. On March 28, 1877, the plaintiff, a citizen of Alabama, brought her action against the defendant in the circuit court of the state of Alabama, in and for Lawrence county, to recover damages sustained by the death of her intestate, which she alleged was caused by the carelessness and negligence of the defendant. The cause was, on the petition of the defendant, removed to this court, by virtue of the provisions of the act of March 3, 1875 (18 Stat. 470), and the record brought here by writ of certiorari, dated October 2, 1877. At the first term of the court following the filing of the record, the plaintiff moved to remand the cause to the state court in which it was commenced, on the ground that this court was without jurisdiction to entertain the cause. The alleged want of jurisdiction was based on the claim of plaintiff, that the defendant corporation was, for all the purposes of this suit, a body corporate, created by the laws of Alabama, and therefore a citizen of Alabama, and was not, as claimed by defendant in its petition for removal, a foreign corporation.

The question was, therefore, presented, whether the Memphis & Charleston Railroad Company was or was not an Alabama corporation. The facts upon which the case turned were as follows: On February 2, 1846, the legislature of Tennessee passed an act "to incorporate the Memphis and Charleston Railroad Company." The act declared that, for the purpose of establishing a communication by railroad between Memphis, Tennessee, and Charleston, South Carolina, the formation of a company was thereby authorized, which, when formed, should be a body corporate, by the name and style of the "Memphis & Charleston Railroad Company." The usual powers of such a corporation were conferred by the act on the body corporate thereby created. The act named a large number of persons to receive subscriptions of stock, and appointed eight persons to act as a board of commissioners or corporators. Under this act books were opened for the subscription of stock, and subscriptions of stock were made.

On the 7th of January, 1850, an act was passed by the legislature of Alabama, entitled "An act to incorporate the Memphis & Charleston Railroad Company," of which the following is a copy:

"Whereas, an act was passed by the state of Tennessee, bearing date the 2d of February, 1846, and the same was amended by an act of the same state, dated February 4, 1848, for the formation of a company under the name and style of the 'Memphis & Charleston Railroad Company,' for the purpose of establishing a communication by rail-

road between Memphis, Tennessee, and Charleston, South Carolina; and, whereas, it is believed that the most eligible route for said road is through a portion of this state; and, whereas, it is also believed that great and lasting benefits will accrue to the inhabitants of this state from said improvement; therefore,

"Section 1. Be it enacted by the senate and house of representatives of the state of Alabama, in general assembly convened: That the said company shall have the right of way, through the territory of this state, to construct their road along the valley of the Tennessee river to the town of Huntsville, and thence to some point on the Nashville & Chattanooga Railroad, or to some point on the Georgia or other railroad leading eastwardly, so as to communicate with Charleston and other Atlantic ports; and that said company shall have the right of way over the bed or bank of the Muscle Shoals canal, provided it can be found necessary in the construction of said road, and shall also have the right of way through any lands belonging to the state of Alabama, or to the Bank of the State of Alabama, or to any of the branch banks of said state, together with the right to use any stone, timber or other materials on said lands, necessary in the construction of said road; and said company shall have and enjoy all the rights, powers and privileges granted to them by the acts of incorporation above mentioned, and shall be subject to all the liabilities and restrictions imposed by the same, together with the following requirements:

"Sec. 2. That in the event said road shall be located through Tuscumbia, it shall be the duty of the company to construct a branch to Florence; and in the event that said road should pass on the north side of the Tennessee river, near Florence, it shall be the duty of said company to construct a branch to Tuscumbia, provided that the subscription in the town or county applying for such branch shall be fully sufficient to pay the costs of the same.

"Sec. 3. That said company shall be authorized and required to open books for the subscription of stock in the capital stock of said corporation, in the state of Alabama, so as to afford the citizens thereof an opportunity to take stock to the amount of fifteen hundred thousand dollars of the capital of said company; provided, that if said fifteen hundred thousand dollars be not subscribed in Alabama within ninety days after the books are open, then it may be taken elsewhere.

"Sec. 4. That the said company shall, at the first meeting of stockholders, designate a time when, and a place or places where, for the convenience of the citizens of the state who may be stockholders, the subsequent elections for directors shall be held, and give notice thereof in one or more newspapers published in north Alabama, and said elections shall be held at the same time, both in this state and in Tennessee.

"Sec. 5. That the moneys subscribed by the citizens of Alabama, whether by the state, counties, corporations or individuals, shall first be applied to the construction of the road within the limits of the state of Alabama, and said moneys shall be placed in some safe depository in north Alabama until required for use; provided, that nothing in this section shall be so construed as to prevent the company from putting under contract the whole road whenever, in their estimation, a sufficient amount of funds shall have been obtained.

"Sec. 6. That said company shall not charge for the transportation of persons or property any higher rates on one part than on another of said road, but the toll shall be equal and uniform on every part of said road for articles of the same description, whether passing in one direction or the other.

"Sec. 7. That the company hereby incorporated shall not locate their road on the track of the Tennessee Valley Railroad, nor of any other railroad which has heretofore been chartered by this state, provided companies have been organized under the same, without first procuring the assent by agreement with said companies, but it shall be lawful for the company hereby incorporated to acquire by purchase, gift, release or otherwise, from any other company, all the rights, privileges and immunities of said company and persons, and enjoy the same as fully as they were or could be possessed or enjoyed by the company making the transfer.

"Sec. 8. That any railroad company now chartered, or hereafter to be chartered, in this state, shall have the right to connect their road with the road authorized by this act.

"Sec. 9. That nothing in this act contained shall prevent the state of Alabama from levying and collecting such taxes on the property of said company, within this state, as shall be, by the general assembly of this state, assessed on the property of other railroads in this state, nor shall anything therein be construed so as to prevent the chartering and building of other railroads in this state, coming within any distance whatever of said road, anything in the said law of Tennessee to the contrary notwithstanding."

At a subsequent day of the same session, to wit, on February 12, 1850, the legislature of Alabama passed an act to amend the said act of January 7, 1850. The first section of this amendatory act provided as follows: "That the subscribers to the capital stock of the Memphis & Charleston Railroad Company, in the state of Alabama, from a failure to obtain the necessary legislation from the states of Tennessee and Mississippi, or from any other cause, deem it expedient to form a separate and independent organization, then, and in that event, they are hereby vested with full power and authority to do the same,

and said company so organized shall be known by the name and style of the Mississippi & Atlantic Railroad Company, and shall have and enjoy all the rights, privileges and powers heretofore granted, imposed, or intended to be imposed, in the several acts incorporating the Memphis & Charleston Railroad Company." The second section of this act, in order to perfect the organization authorized by the first section, named certain persons to act as corporators, with all the powers of the corporation named in the original act. The third section provided for a consolidation of the company authorized by the amendatory act with any company or companies which had been, or might be formed, under the authority of either the legislature of Tennessee or Mississippi.

Under the provisions of the above mentioned act of the legislature of Tennessee, to incorporate the Memphis & Charleston Railroad Company, and of the said first mentioned act of the legislature of Alabama, bearing the same title, the stockholders of the Memphis & Charleston Railroad Company met in Tuscumbia, Alabama, on April 29, 1850, and proceeded to the election of nine directors of the company, and on May 1, 1850, the said directors organized by the election of a president, treasurer and other officers. Afterwards, on January 15, 1851, at a meeting of the board of directors, held on that day in Huntsville, Alabama, it was resolved that the branch from Tuscumbia to Florence be located and constructed upon the terms and conditions of the charter. The Memphis & Charleston Railroad Company has but one president and board of directors, and but one set of corporate officers, and never had but one. The offices of the president, superintendent and treasurer are all located in Memphis, Tennessee, and the chief officers in all branches of the business of the company have always kept their offices there. The stock of the Memphis & Charleston Railroad Company represented and covered all the property of the company, including its line of road from Memphis, Tennessee, its western terminus, to Stevenson, Alabama, its eastern terminus.

D. P. Lewis and J. B. Moore, for the motion to remand.

Wm. Cooper, Milton Humes, W. Y. C. Humes, and George S. Gordon, contra.

WOODS, Circuit Judge. The contention of counsel who move to remand is, that the act of the legislature of Alabama of January 7, 1850, entitled "An act to incorporate the Memphis & Charleston Railroad Company," created a body corporate, separate and distinct from the corporation of the same name created by the legislature of Tennessee, February 2, 1846, and that such body corporate was, of course, a citizen of the state of Alabama, by which it was created. On the other side, it is claimed that the purpose and effect of the legislation of Alabama was, either simply to confer new powers and privileges, within the state of Alabama, on a Tennessee corporation; in other words, that the act of January 7, 1850, was merely an enabling act, or that it was to confer a charter on the Tennessee company without creating a new corporation. There is no principle of public law which prohibits a state from authorizing a foreign corporation to extend a railroad into its own territory, and for that purpose to buy or take land, and after its construction, to maintain and use its road. The corporation still remains one corporation—a domestic corporation, in the state which created, and a foreign corporation in the other, enjoying the franchises conferred by the charter in the one, and the powers derived from the enabling act in the other. There is certainly no reason for treating it as two corporations. Railroad Co. v. Harris, 12 Wall. [79 U. S.] 65. The question is not so simple when two states, by common legislation, create the same corporation. In such a case, it is not merely the corporation of one state, with enlarged powers derived from the other, but it is as much the corporation of one state as of the other, and is a citizen of both. If, however, the legislatures of both states were to make one corporation only, there is no legal or constitutional necessity for treating it as two corporations in any suits or proceedings by or against it. It was, at one time, held by the supreme court of the United States, that a railroad corporation created by the legislature of two states, with the same capacities and powers, and for the same objects, and referred to in the laws of the states as one corporate body, although composed of the same persons and represented by one name, was nevertheless, on a legal and constitutional necessity, two distinct and separate corporations, upon the ground that the corporation was the creation of the sovereignty which brought it into being, and could have no legal existence beyond its jurisdiction. Ohio & M. R. Co. v. Wheeler, 1 Black [66 U. S.] 286. This, however, is no longer the holding of the supreme court of the United States. According to the recent and better view, as it seems to me, of that court, the question, whether there is a unity in the corporation, and in the proprietorship of the corporate property, is one of legislative intent, and not of legislative power. Several states may, by competent legislation, unite in creating the same corporation, or in combining several pre-existing corporations into a single one. One state may make a corporation of another state, as then organized and conducted, a corporation of its own, as to any property within its territorial jurisdiction. A state may, by an enabling act, authorize a corporation created in another state to build and use a railroad within its own limits without creating a new corporation. Railroad Co. v. Harris, supra. See, also,

Bishop v. Brainerd, 28 Conn. 289; County of Allegheny v. Cleveland & P. R. Co., 51 Pa. St. 228.

The question to be decided, therefore, is resolved into this: Did the legislature of Alabama, by the act of January 7, 1850, intend to create a new corporate body to be known as the Memphis & Charleston Railroad Company, to be a corporation and citizen of Alabama, or merely to recognize the existence of a Tennessee corporation of the same name, and confer upon it the certain powers and privileges, and subject it to certain conditions and restrictions in the state of Alabama? I have had much difficulty in arriving at the object of the legislature in the passage of this act. I have, however, finally reached a conclusion, satisfactory to my own mind, that the design of the law was to create a body corporate in the state of Alabama, having the same powers and franchises as the Memphis & Charleston Railroad Company, incorporated by the legislature of Tennessee. The burden of proof is upon the defendant, to show that the Memphis & Charleston Railroad Company, defendant in this case, is not a citizen of the state of Alabama, but a citizen of Tennessee. The defendant, on this hearing, affirms the jurisdiction of this court, and the plaintiff denies it. In a suit brought by or against a corporation, it is necessary that it be made to appear that the artificial being was brought into existence by the law of some state other than that of which the adverse party is a citizen. Muller v. Dows, 94 U. S. 444.

The facts necessary to jurisdiction of the courts of the United States must be affirmatively averred, and if denied, proved. The defendant must, on this hearing, satisfy the court of its jurisdiction, and this can be done only by showing that the corporate body sued in this case is not a citizen of the state of Alabama. If this proposition is not made reasonably clear, the court ought not to take jurisdiction, but the motion to remand the cause to the state court should prevail. The controversy turns, mainly, on the construction of the act of January 7, 1850, to incorporate the Memphis & Charleston Railroad Company. The proper construction of a statute requires an examination of the body of the act, the preamble, where there is one, and in certain cases, and for certain purposes, the title may be considered. The true meaning of a statute is generally to be sought in the purview, enacting part, or body of the act. Sedg. Const. 45.

It is an established rule in the exposition of statutes, that the intention of the lawgiver is to be deduced from a view of the whole and of every part of the statute, taken and compared together. 1 Kent, Comm. 462; Dwar. St. 194. The preamble to a statute usually contains the motives and inducements to the making of it, but it has been held to be no part of it, or rather it is not an essential part, and is frequently omitted. The preamble is properly referred to when doubts and ambiguities arise upon the words of the enacting part. The preamble can never enlarge it, can not confer any powers per se. Its true office is to expound powers conferred, not substantially to create them. A preamble is not only not essential, and is often omitted, but it is, strictly speaking, without force in a legislative sense, being but a guide to and not the intent of the statute. And to what is it properly a guide? To the meaning of the enactment? No, but the intentions of the framer, which is only the first stage on the road in the construction of statutes. Dwar. St. 107, citing King v. Athos, 8 Mod. 144; Mills v. Wilkins, 6 Mod. 62; Story, Com. Rules Interp. Const. The preamble of an act may be resorted to to aid in the construction of the enacting clause when any ambiguity exists. Beard v. Rowan, 9 Pet. [34 U. S.] 301.

The use of a title in expounding a statute is shown by the following citations: By the English decisions, the title of a statute has been frequently held to be no part of a statute, for it has usually been framed only by the clerk of the house in which the bill first passes, and is seldom read more than once. In Mills v. Wilkins, 6 Mod. 62, Chief Justice Holt said: "It is true, that the title of an act of parliament is no part of the law or enacting part, no more than the title of a book is part of a book, for the title is not the law, but the name or description given to it by the makers. Being, then, no part of the act, the title is seen to afford no legislative import. Dwarris, 103." But even in England this rule has been modified, and it now seems that when the meaning of the body of the act is doubtful, the title may be relied on as an assumption in arriving at a conclusion. The King v. Cartwright, 4 Term R. 490. The title is worthy of more consideration, in the case of American statutes, when the legislature passes on the whole statute title, preamble, if any, and the body of the statute. In many American legislatures the title of the act is agreed to by a distinct vote of the body. But even in this country, though the title of an act cannot control plain words in the body of the statute, yet, taken with other parts, it may assist in removing ambiguities. Where the intent is plain nothing is left to construction, but when the mind labors to discover the design of the law-making power, everything which can aid this object may be resorted to, and even the title of the act may receive a due share of consideration. U. S. v. Fisher, 2 Cranch [6 U. S.] 358; U. S. v. Palmer, 3 Wheat. [16 U. S.] 610; Com. v. Slifer, 53 Pa. St. 71. In doubtful cases the title of an act may serve to explain the general purport, but even then it has little weight. Hadden v. Collector, 5 Wall. [72 U. S.] 107.

In the light of these principles the act of January 7, 1850, is to be construed and its meaning ascertained. The question to be decided is, is the act a mere enabling act to confer certain powers on a Tennessee corporation within the state of Alabama, or did it create a new body corporate, having the same franchises as the Tennessee corporation, but still being a distinct and separate artificial person. In resolving this question the preamble affords no assistance, for it is just as applicable to the one theory as the other. It refers to the act of Tennessee, incorporating a company for the purpose of establishing a communication between Memphis and Charleston, recites that the most eligible route for said road is believed to be through a portion of this state, and that great and lasting benefits will accrue to the inhabitants of this state from said improvement. These are the reasons given by the preamble which induced the passage of the act. These reasons are just as strong for the passage of an act to create a new Alabama corporation to assist in the enterprise, as for the passage of an enabling act for the benefit of a Tennessee corporation. The end in view, namely, the establishing of a railroad communication between Memphis and Charleston, and the consequent benefits to the inhabitants of Alabama, could be just as well secured by one enactment as the other. We derive no light from the preamble, and must, therefore, look first to the body of the act to ascertain its meaning. The first section of the act, standing alone, gives strong warrant to the idea that the act is only an enabling act. If the act consisted of the first section only, and its title were "An act to confirm an act passed by the legislature of Tennessee to incorporate the Memphis & Charleston Railroad Company," the controversy would fall directly under the authority of the case of Railroad Co. v. Harris, 12 Wall. [79 U. S.] 65, where it was held that such a law did not create a new corporation, but granted permission to a corporation of another state to exercise its functions within the boundaries of the state by which the act was passed. The conclusion of the supreme court in that case, in the construction of the law of Virginia, was reached only after re-argument, and after much difference of opinion upon the question, whether the law of Virginia created a new and distinct corporation, or was only an enabling act in respect to the corporation known as the Baltimore & Ohio Railroad Company, as originally created by Maryland. And it is worthy of remark, that the same enactment of the Virginia legislature had been construed by the supreme court of that state as creating a Virginia corporation—a new and distinct corporate body. The case of Williams v. Missouri, K. & T. Ry. Co. [Case No. 17,728] would also be an authority to support the

view of the defendant, if the Alabama act consisted of the first section, only with the title changed as above suggested. But the act under consideration does not stop with the first section; several sections are added. It is, to my mind, very significant, that in the first section the company is called "the said company." The section begins, "that said company shall be authorized and required to open books," etc. The fourth section declares "that said company shall, at the first meeting of stockholders," etc.; and throughout this act until we reach the seventh section, the company is referred to as "the said company." But, in the seventh section, however, this phrase is abandoned, as if designedly, and the company is twice designated as "the company hereby incorporated." Why this change? It was more natural to continue the use of the phrase, "the said company," which had been employed seven times in the preceding sections of the act. But the legislature, with the apparent design of giving a construction to what had been done by the first section, declares, in the seventh, that "the company hereby incorporated shall not locate their road," etc.; "and it shall be lawful for the company hereby incorporated to acquire by purchase," etc. These words, used under these circumstances, mean something. They ought to have effect if possible. We are not authorized to reject them. They are not inconsistent with the first section. They are only explanatory of it. They are a declaration by the legislature, that the effect of the act was to incorporate a company. They remove the doubt which, for a long time, troubled the supreme court of the United States in construing the Virginia act in the case of Railroad Co. v. Harris, supra.

The question might be left here, but considering that the true meaning of the act is still open to some doubt, the case has arisen for resort to the title—and a case in which the title ought to have more than ordinary weight. There is no dispute as to the purpose which the legislature had in view, for that is indicated by the preamble; it was to aid in establishing communication between Memphis and Charleston by a railroad passing over a portion of the territory of Alabama, and it was to afford that aid by an act either creating an Alabama railroad corporation, or by an act conferring upon a Tennessee railroad corporation franchises to be enjoyed within the territory of Alabama. The only question is, which of these two things was done by the act under consideration? The title is explicit, and so far as it deserves consideration, its weight is altogether in favor of the hypothesis that a new body corporate was created. It declares the purpose of the act to be "to incorporate the Memphis & Charleston Railroad Company." There is no ambiguity here. To incorporate means "to form into a legal body, or body politic—to constitute

into a corporation recognized by law as persons with special functions, rights and duties, as to incorporate a bank, a railroad company, or the like." Webst. Dict. This seems to remove the doubt, if any existed. The title declares the purpose of the act to be to incorporate a certain railroad company, and the seventh section declares that by the act such a company was incorporated. But conceding that, after giving the title all the weight it deserves, the true construction of the act is still in doubt, nevertheless, it may be finally claimed that the doubt is of such strength as to preclude the jurisdiction of the courts of the United States. It is the duty of suitors who invoke that jurisdiction, to bring themselves clearly within it, as we have already seen. I am of opinion, therefore, that the defendant has not met the requirements of the law by showing that this court has jurisdiction of the case.

It was urged, in the argument, that the requirements of the fourth section are inconsistent with the view here taken. The requirement referred to is, that "the said company shall designate a time and place in north Alabama where, for the convenience of Alabama stockholders, elections of directors shall be held," etc. It is urged that it would be absurd for the law to require the directors of a Tennessee corporation to fix the time and place for the election of the directors of an Alabama corporation. The obvious answer to this is, that it was the plain intent of the law that while there were to be two corporate bodies of the same name—one in Tennessee and one in Alabama —yet they were to have the same board of directors and the same officers, in a word, the same organization. That this could be done, is held in the case of Ohio & M. R. Co. v. Wheeler, supra. If the two corporations were to be governed by the same board of directors, there was great propriety in the enactment that the Alabama stockholders should have notice of the time and place fixed for their election, and that a poll for the election of directors should be opened in north Alabama.

The act of February 12, 1850, to amend the above recited act to incorporate the Memphis & Charleston Railroad Company, is not inconsistent with the view above taken. As it was the purpose of the original act that both the Tennessee and Alabama corporations should have but one organization and board of officers, the amendatory act provided that in a certain contingency the subscribers to the capital stock of the Memphis & Charleston Railroad Company, in Alabama, might, if they deemed it expedient, form a separate and independent organization. In other words, that being already a body corporate, they might withdraw from their connection with the Memphis & Charleston Railroad Company of Tennessee, and take a new name, and for this purpose commissioners, or corporators, were named, and were authorized to change the western terminus of their road. In fact, this amendatory act seems entirely inconsistent with the theory that there was no Alabama corporation known as the Memphis & Charleston Railroad Company. The subsequent legislation of the state, although not decisive, seems to proceed on the idea that it is dealing with a domestic corporation. In an act approved February 7, 1856, the act of January 7, 1850, is referred to as the "charter granted to said company by the general assembly of this state," and four different acts have been passed by the legislature of Alabama to authorize the Memphis & Charleston Railroad Company to borrow money and secure its payment by mortgage on its road, without any hint that this power was conferred on a foreign corporation. In the case of Memphis & C. R. Co. v. Bibb, 37 Ala. 699, the said company is designated as a corporation chartered by an act of the legislature of this state. This is, to be sure, merely obiter dictum, but it tends to show how the railroad company has been regarded by the highest judicial tribunal of the state. But it is claimed by counsel for the railroad company, that even admitting that the act of January 7, 1850, was a charter, yet it was a charter conferred on a corporation of the state of Tennessee, without creating a new corporate body. It is true, that two states may unite in creating one and the same corporate body, and it was so held in Railroad Co. v. Harris, supra. But when two states unite to create the same body corporate, it is a citizen in each of the states by whose legislature it is created. Railroad Co. v. Whitton, 13 Wall. [80 U. S.] 270; Ohio & M. R. Co. v. Wheeler, 1 Black [66 U. S.] 286.

After an attentive consideration of the arguments of counsel, and on examination of the authorities cited by them, I am of opinion that the act of January 7, 1850, of the general assembly of this state, created the Memphis & Charleston Railroad Company as an Alabama corporation. The consequence of this view is, that this court has not jurisdiction of this case, and that the motion to remand it to the state court from which it was removed must prevail.