Storks, C. J.
The judgment on which the present proceeding by writ of scire-facias is foundéd, was, by the concession of both the parties in this case, rendered against the New York and Boston Railroad Company, which was the corporation chartered by the legislature of the state of Connecticut in 1846, and the question is, whether the defendant, when the. copy of the writ, in the suit in which that judgment was rendered, was left with him in service, was indebted to that corporation,. And it is also conceded that he was then so indebted, by virtue of his subscription to the original stock of that corporation, unless, as is claimed by the defendant, that indebtedness had been previously transferred and assigned to a consolidated corporation of the same name,1'composed of the first mentioned corporation and the Woonsocket Railroad Company, a corporation .which was chartered by the state of Rhode Island. It is further conceded, that in point of form, the indebtedness of the defendant on his subscription was regularly transferred by the Connecticut corporation to the consolidated corporations ; but the legal validity of that transfer is questioned by the- plaintiff, on the grounds which will be hereafter noticed. •
*243 The act incorporating the Rhode Island corporation which was passed after the creation of the Connecticut corporation, authorized the former company to unite with any railroad company which *had been or should be empowered [ *297 ] by the legislature of Connecticut to construct a railroad to the westerly terminus of the railroad of the Rhode Island corporation, and provided that, when the companies should have been so united, the stockholders of one company should become stockholders in the other companies or company ; that the companies thus united should constitute one corporation, by such name as the united companies might.adopt; and that all franchises, property, powers and privileges granted or-acquired under the authority of said states respectively, should be held and enjoyed by the said stockholders in proportion to the number of,shares or amount of property held bv them respectively in either or both of said corporations. The Connecticut and Rhode Island corporations subsequently entered into a contract with each other, by which, in its terms, the two companies became completely merged, consolidated and amalgamated into a new corporation by the name of the New York and Boston Railroad Company, and all the franchises, property, power and privileges of the two respective corporations were transferred to the consolidated company. . In 1849 the legislature of Connecticut passed the following resolution, after reciting that the two corporations had united and made joint stock with each other, thereby forming one company under the name of the New York and Boston Railroad Company ; “ Resolved by this assembly, that the proceedings of the said companies, whereby they became so united and merged as one company, shall be and the same are hereby validated and confirmed, and the capital stock of said companies shall together form the capital stock of said united company, and the stockholders of each of said companies shall be stockholders of the said united company, which shall have all the powers, rights, privileges and franchises now enjoyed by, or which may be hereafter granted to, the New York and Boston Railroad Company in this state.”
The plaintiff objects that the contract of consolidation '^between the two companies was one which neither the.[ *298 ] Connecticut corporation nor its stockholders, unless they were unanimous,-could, according to its charter, legally make, and that therefore it derived no validity from the Connecticut resolutions. The-original charter of that company authorized it “ to make joint stocks with any other railroad corporation;” and it was subsequently, in 1849, also authorized “ to connect and make joint stock or common interest with any *244 other railroad company or companies, in respect to the whole or any portion or portions of the road.or roads of the said company or companies.”
We think that it is very questionable whether these provisions would authorize the Connecticut corporation to become consolidated with the Rhode Island corporation, so that the stocks of said companies should be completely merged into on.e, or whether its effect was anything more than to enable the Connecticut corporation to unite with the Rhode Island corporation, so that the operations of the two corporations severally should be carried on by them respectively for the common interest and benefit of the two corporations. But, however, that may be, the charter of the Connecticut corporation provided that it might be altered, amended, or repealed at the pleasure of the General Assembly, and under this reserved power we are of the opinion that it was competent for the legislature of that state, either by its own direct enactment, or by ratifying an arrangement between the Connecticut and Rhode Island corporations for their consolidation, (supposing the arrangement in the first instance to be unauthorized), to sanction and validate such amalgamation, and that such ratification constitutes virtually an amendment of the charter'of the Connecticut corporation, as much as if it was enacted specifically and in form as an amendment, and under the said reserved power it was unnecessary that the stockholders, or even the directors, should act upon the said consolidation, although in fact such consolidation was ratified and confirmed subsequently by the board of directors, and also at a legal meeting of the stockholders by a majority of them. [ *299 ] Hence it appears that by the terms *of the charters of the Rhode Island and Connecticut corporations and the amendments made to the latter in connection with the agreement of the two corporations, a new consolidated corporation has been created, provided it was competent for those two states, by such united action, to create, under their joint authority, such a corporation. It is not questioned by the plaintiff, and indeed could not be in view of the authorities, that a state may create a corporation which shall be composed of two or more corporations created by the same state, as well as of two or more natural persons, or that a state may create a corporation composed of natural persons belonging to different states. And there is substantially no more objection to a state creating a corporation to be composed of corporations chartered by different states than of natural persons belonging to those states. Nor do we see any objection, technical or otherwise, to the parting, by two or more states unitedly, in the exercise of their sovereign *245 authority, with such of their respective powers as shall he necessary, in order to confer upon persons natural or artificial the franchise or privilege of being a corporation, and with such powers and privileges as they shall deem it proper to grant to them. And this power has been not unfrequently exercised by states without objection or question.
These views do not conflict with the case of Farnum v. The Blackstone Canal Co., (1 Sumner’s R., 46,) in which the court held only, as a matter of construction, that in that particular case.it was not the intention of the legislatures of Massachusetts and Rhode Island to consolidate or amalgamate the two corporations there in question, or to do more than to empower them to unite for the promotion of their common interests. No question was there made as to the competency of those legislatures to consolidate those corporations into one, or even to extinguish their original individual existence. In regard to the effect of such a consolidation, it does not necessarily follow that it would extinguish, to all intents and purposes, the existence of those corporations. It is possible for them still to subsist for certain purposes, notwithstanding they should be thus amalgamated. Whether, however, *the consolidation of [ *300 ] the Connecticut and Rhode Island corporations now in question, operated as a total or partial extinction of those respective corporations or either of them, it is quite unnecessary to consider in this case, because, as we have already seen, the corporation composed of those two corporations is one which was clearly competent to take an assignment' of the claim founded on the subscription of the defendant to the stock of the Connecticut corporation, and if that claim was legally transferred to the consolidated corporation, the defendant thenceforth ceased to be a debtor to the Connecticut corporation, and therefore the plaintiff can not recover in this suit, brought against him as such debtor, whatever other rights may lie retained-by the Connecticut corporation.
The form of the assignment by the Connecticut to the consolidated corporation, of the debt owed to the former by the defendant, being conceded to be sufficient, and the objections of the plaintiff to the existence of the latter corporation to which it was assigned, and to its capacity to receive such an assignment, being answered, the inquiry remains whether that assignment was invalid by reason of the effect it might have in withdrawing the assets of the Connecticut corporation from its creditors and defeating them in the collection of their .debts, which is the only other ground upon which the assignment is attacked. It is to be observed in this case that, so far as there is any evidence as *246 to the time when the claim of the plaintiff against that corporation, which he is now endeavoring to collect, accrued, it originated after the assignment of the debt of the defendant to the consolidated corporation. That claim consisted of the notes on which the plaintiff obtained the judgment against the Connecticut corporation, upon which the suit was brought on which the judgment was rendered to enforce which the present scire facias is brought, and those notes.were not given until long after the assignment which is now in question. That assignment, therefore, was not invalid on the ground that it defeated the collection of any then existing debt against the Connecticut .corporation. If, however, that debt of the plain- [ *301 ] *tiff had accrued before the assignment, we are unable to perceive how the latter could be invalidated by that circumstance. There was nothing in the charter of the Connecticut corporation which prevented it, although' it might even have been insolvent, from assigning fairly, and for a good consideration, either the claim that it held against, the defendant or any other of its property, and no general principle, of law forbids an- honest transfer for value by any debtor of any of his property, to whatever. extent he may be indebted. In the absence of any specific lien, acquired by a creditor, his debtor may, by the principles of the common law which we are now applying, honestly deal with his property, although insolvent, in the same manner as if he were solvent. In the present case it is not claimed by the .plaintiff that the assignment by the Connecticut corporation- was made with any fraudulent intent, or that there is any objection to the consideration of that assignment, which was the assumption by the consolidated corporation of the debts of the Connecticut corporation. The obligation to assume those debts was one which could be enforced for. the benefit of the latter corporation or its creditors against the corporation which received the assignment, and the validity of the assignment would not depend on the ultimate ability of the latter corporation to fulfill that obligation. These,, considerations, to show that the assignment would have been valid as against a, prior creditor of the Connecticut.-corporation, are at least applicable with equal force to the assignment of a debt due from -.the latter corporation which did not accrue until after the execution of the assignment. In short, the question is whether an assignment of property by a debtor, honestly and for a valuable consideration, is valid against a creditor . whose debt should accrue, subsequently to the assignment. ■ We know of no principle of the common law on which such a tainsfer can be ¡impugned, and.in this case it is affected by no statute, •
*247 The union of the united Connecticut and Rhode Island corporations with the Charles River Railroad Company, which took place in 1855, has been adverted to in the course of the argument, as though it had a bearing on the *case before us. We designedly say nothing of that [ *302 ] union, because we would leave entirely open every question in which the rights of those united companies are involved, and it is plainly unnecessary to look further than the consolidation, or union of the Connecticut and Rhode Island corporations, and-the condition of the claim against the defendant growing out of the assignment of his subscription to that consolidated corporation. What has been done with that claim since it was assigned to that corporation is of no importance in the present case; it is sufficient that, by that assignment, it had ceased to be a debt due from the defendant to the Connecticut corporation, and could not therefore be attached by the plaintiff as its creditor. A new trial is not advised.
In this opinion the other judges concurred.
New trial not advised.