The Ohio and Mississippi Railway Company

*v.*

The People *ex rel.* R. P. Hanna.

*Filed at Springfield January 18, 1888.*

1. RAILROADS—*consolidation of railroads—of the right to consolidate— status of the new company and of the constituent companies.* Under the act of February 28, 1854, railroad companies organized under the laws of this State, and whose lines of railway were so intersected as to constitute a continuous line within this State, might consolidate their property, stock, rights and franchises, and thereby constitute a new corporation, under a new name, possessing the property, rights, powers and franchises of the constituent companies, as given by their charters; and thereupon the constituent companies, as independent legal entities, would cease to exist, and all their duties and obligations, whether to the public or to private persons, would be cast upon and must be assumed and discharged by the new consolidated company.

2. SAME—*consolidation of railroads existing in different States—of the power—and of the relation to the respective States, of the new corporation and of the constituent companies.* A corporation *de jure* as well as *de facto* may be created, with the consent and under the authority of two or more States, by the voluntary consolidation of corporations created and existing by virtue of the laws of such States, respectively. On the consummation of such consolidation of railway companies in two or more States, authorized by the laws of the States creating them, a new corporation will be created, having in each State all the powers, rights and franchises that the constituent companies had in the same State, but not in one State the powers, etc., of the constituent company in the other State. The new corporation will stand in each State as the original corporation had previously stood in the same State.

3. A consolidated railroad company formed by the consolidation of two or more companies of different States, having a capital stock which is a unit, and only one set of stockholders, who have an interest, as such, in all its property everywhere, and a single board of directors, will have its domicile in each State, and its stockholders, directors and officers may, in the absence of any statutory provision to the contrary, hold meetings and transact corporate business in either of the States, though in relation to either State the consolidated company will be a separate corporation, governed by the laws of that State as to its property therein, and subject to taxation in conformity with the laws of such State, and to all the police power of the State in respect to its property and franchise within such State.

4. Upon the creation of the consolidated corporation, the constituent corporations of the different States do not necessarily cease to exist, although they lie dormant, and their property, rights, powers and franchises are possessed and exercised by the new consolidated corporation.

5.· SAME—*residence and citizenship of directors to be in this State—to what corporations the requirement applies.* The constitutional provision that "a majority of the directors of any railroad corporation now incorporated or hereafter to be incorporated by the laws of this State, shall be citizens and residents of this State," has no application to a railway corporation formed, prior to the adoption of the constitution, by the consolidation of a railway company in this State with one of another State, by the consent of each of such States. Such a corporation exists under the laws of the two States, and can not be said to be incorporated solely under the laws of either.

6. CONSTITUTION—*rule and object of construction.* The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it; and this intent is to be found in the instrument itself, from the words and phrases employed. The presumption is, that the language employed was intended to have its ordinary and usual meaning, and to be sufficiently perspicuous within itself to convey the intent.

APPEAL from the Circuit Court of Wayne county; the Hon. CARROLL C. BOGGS, Judge, presiding.

Messrs. POLLARD & WERNER, for the appellant:

This constitutional provision does not apply to appellant. It does not, in terms, mention such a consolidation, but, on the contrary, the language seems to negative such a construction, and confine the provision to corporations wholly incorporated by the laws of this State.

Appellant was a single corporate body in all the States in which it operated its road, with the right to hold its corporate meetings and transact its business in either, though deriving its powers to act in each State from the laws of that State. *Graham* v. *Railroad·Co.* 14 Fed. Rep. 753; 118 U. S. 161.

Under its original charter, and act authorizing the consolidation, which gave the consolidated company all the rights which it enjoyed under the original charter, appellant had the right of electing directors without regard to their citizenship

or residence. This was a valuable and vested property right, and the State had no power to take it away, either by statute or by a constitutional provision. *Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Hayes* v. *Commonwealth,* 82 Pa. St. 518; *State* v. *Greer,* 78 Mo. 188.

Messrs. Ramsey, Maxwell & Matthews, also for the appellant:

The constitutional provision does not apply to companies consolidated under the laws of different States. Such an application would be unreasonable and unjust. *Railroad Co.* v. *Speers,* 56 Pa. St. 325.

The language of the section relates to railroad companies "incorporated by the laws of this State." *People* v. *Thatcher,* 95 Ill. 109; *Railroad Co.* v. *People,* id. 313; *Ruggles* v. *People,* 91 id. 256; *Railroad Co.* v. *Jacksonville,* 67 id. 37; *People* v. *Lœwenthal,* 93 id. 191.

If the language of the section was intended to apply to appellant, it is in contravention of the Federal constitution, as impairing the obligation of contracts. Appellant was incorporated in 1861. *Railway Co.* v. *McClelland,* 25 Ill. 140; *Railroad Co.* v. *People,* 105 id. 657; *Ward* v. *Farwell,* 97 id. 609; *State* v. *Greer,* 78 Mo. 188; *Hayes* v. *Commonwealth,* 82 Pa. St. 518; *Winter* v. *Jones,* 10 Ga. 490; *Planters' Bank* v. *Sharp,* 6 How. 327; *People* v. *Jackson P. N. Co.* 9 Mich. 285; *Gas Co.* v. *Light Co.* 115 U. S. 650; *Ireland* v. *Turnpike Co.* 19 Ohio St. 373.

Mr. George Hunt, Attorney General, for the appellee:

So far as the consolidation and operation of the consolidated company in this State is concerned, it could be just as fully done if there was no law relating to the matter in Ohio or Indiana. There can be no treaty between the States, and no consolidation by joint action of the States. If a corporation of this State can not consolidate with a corporation of another

State, and comply with the laws of this State, no consolidation can take place. The grant of power to consolidate with corporations of other States can not release corporations from a compliance with the laws of this State.

It is claimed that the language of the constitution does not apply to appellant, or to corporations organized under the laws of this State and another State. But even such a corporation is incorporated by the laws of this State. It has been held that where railroad corporations of several States consolidate into one body, in its relation to any State it remains a separate corporation, governed by the laws of that State as to its property therein. *Graham* v. *Railroad Co.* 118 U. S. 163.

In the case of *Ohio and Mississippi Railroad Co.* v. *Wheeler*, 1 Black, 295, the railroad company claimed its corporate existence under the laws of Ohio and Indiana. The court said: "It is true that a corporation by the name and style of the plaintiff appears to have been chartered by the States of Indiana and Ohio, clothed with the same capacities and powers, and intended to accomplish the same objects, and it is spoken of in the laws of the States as one corporate body, exercising the same powers and fulfilling the same duties in both States. Yet it has no existence in either State, except by the law of the State, and neither State could confer on it a corporate existence in the other, nor add to or diminish the powers to be there exercised."

A corporation "must dwell in the place of its creation, and can not migrate to another sovereignty." *Bank of Augusta* v. *Earle*, 13 Pet. 588.

A corporation can have no legal existence out of the sovereignty by which it was created. It must dwell in the place of its creation. *Runyan* v. *Lessees of Coster*, 14 Pet. 129; *Railroad Co.* v. *Wheeler*, 1 Black, 295.

It follows that the consolidation does not make the corporation a resident of another State, nor authorize it to go beyond

the State borders for its officers. It is still a corporation of this State, subject to the laws of this State. While the State permits consolidation with a corporation of another State, it does not authorize a violation of law in order to effect that consolidation. If the consolidation is not permitted by the other States in such a manner that the laws of this State can be complied with, or if, from any reason, the Illinois corporation can not consolidate and still comply with the laws of the State, then it should refrain from consolidating.

The condition is implied that the corporation shall be subject to such reasonable regulations, in respect to the general conduct of its affairs, as the legislature may, from time to time, prescribe, which do not materially interfere with or obstruct the substantial enjoyment of the privileges the State has granted, and serve only to secure the ends for which the corporation was created. *Sinking Fund Cases*, 99 U. S. 68; *Commonwealth* v. *Bank*, 21 Pick. 542; *Bank* v. *Mississippi*, 4 S. & M. 497; *Life Ins. Co.* v. *Needles*, 113 U. S. 574.

Mr. J. R. Creighton, State's Attorney, Mr. William H. Robinson, and Mr. R. P. Hanna, also for the appellee:

The provision of the constitution is a proper police regulation, and makes no exception, but includes all railroads "now incorporated" or hereafter to be incorporated.

Appellant had no power to consolidate with a railroad in Indiana, so as to form a new and independent corporation, and thereby relieve itself from all the legal requirements attaching to other railroads.

A corporation is at all times subject to the laws and jurisdiction of the State from whence it derives it existence. *Bank* v. *Earle*, 13 Pet. 519; *Hill* v. *Beach*, 1 Beas. 31; *Railroad Co.* v. *Coffee County*, 6 Kan. 343; *State* v. *Railway Co.* 45 Wis. 579; *Railroad Co.* v. *Wheeler*, 1 Black, 286.

Mr. Justice Shope delivered the opinion of the Court:

This was an information in the nature of a *quo warranto,* filed in the Wayne circuit court, by the State's attorney of that county, against the Ohio and Mississippi Railway Company. A demurrer was sustained as to the first and overruled as to the second and third counts of the information, and as to such counts respondent answered. A demurrer to the answer being interposed and sustained, respondent refused to answer further, and was adjudged guilty as charged in the second and third counts of the information, and a fine of $1000 was thereupon imposed upon respondent. Motions for a new trial and in arrest of judgment having been overruled, the record is brought here upon respondent's appeal.

It is charged in the information that the Ohio and Mississippi Railway Company is a corporation chartered, organized and existing under the laws of this State, owning and operating a railroad in this State from East St. Louis to the Wabash river, opposite the city of Vincennes, Indiana, and from Shawneetown, through Wayne county, to Beardstown; that it is governed and controlled in its corporate capacity by a board of thirteen directors, a majority of whom are not citizens and residents of this State, and twelve of whom are now and have been citizens and residents of other States, contrary to the laws of this State, whereby it has forfeited its franchise, powers and privileges. By its answer, the railway company denied that it was guilty of the several wrongs charged against it; admitted that it was incorporated under the laws of Illinois, and said that such incorporation was made by virtue and in pursuance of an act of the legislature of Illinois, entitled "An act to incorporate the Ohio and Mississippi Railway Company, and for other purposes," approved February 5, 1861; that in the first section thereof thirteen persons were named incorporators of the company, and that a majority of the persons so named were non-residents of the State of Illinois, and were

citizens and residents of other States; that by virtue of the same section of that act respondent was invested with all the corporate franchises and rights which had theretofore been granted to and vested in the corporation known as the Ohio and Mississippi Railroad Company, incorporated by an act of the General Assembly of the State of Illinois, entitled "An act to incorporate the Ohio and Mississippi Railroad Company, and for other purposes," approved February 12, 1851; referred to both these acts and made them parts of its answer, and insisted, that by virtue of these special acts, in pursuance of which it was incorporated, it became vested with the right to elect a majority of its directors, or all of them, from stockholders residing outside of the State of Illinois, and not citizens of Illinois; that in 1867, and before the adoption of the present constitution of this State, by virtue of the laws of the State of Illinois, and of similar laws in the States of Indiana and Ohio, respondent became consolidated with the Ohio and Mississippi Railway Company, and owning and operating a railroad leading from the Mississippi river at East St. Louis, Illinois, to Cincinnati, Ohio, all under one management and one board of directors, by which consolidation the property, stock and franchises of the old constituent corporations named, became completely merged in respondent, its line of railroad being connected and continuous, and which consolidation was, in all respects, in conformity with the laws of the States of Illinois, Indiana and Ohio; that its principal business as a carrier is between St. Louis, Missouri, and Cincinnati, Ohio; that its capital stock is held and owned, excepting a few shares, by persons outside of Illinois, being largely held in foreign countries and in New York; that now, and for some time last past, but one of its stockholders is or has been a citizen and resident of the city of Springfield, Illinois, and that all its other directors are citizens and residents of other States,—giving their respective places of residence; "that the officers of respondent have always been of the opinion, and have been so

advised, that under its charter and consolidation, by authority of the laws of this State, with said railroad corporations in the States of Indiana and Ohio, the law of this State requiring a majority of the directors to be citizens and residents of this State did not apply to respondent; that it has been supported in this opinion and belief by the fact that a majority of its directors have never resided in or been citizens of this State, which fact has been well known to the citizens and officers of this State, and to the relator in this proceeding, and still, until the filing of this proceeding, no objection has ever been made by either citizen, officer or relator, and no injury has been sustained thereby by any one; that respondent has always acted in this matter in good faith, and with a desire to comply with the laws of the State, as they were understood by its officers, and as they seemed to be understood by the officers of the State."

The principal question here presented is, whether the organic law of the State is applicable to appellant corporation. The consolidation mentioned was completed in 1867, and there was at that time, neither in the constitution of the State nor on the statute books, any provision requiring that a majority of the board of directors of corporations similar to the Ohio and Mississippi Railway Company should be citizens and residents of this State. The provision of the present constitution, which is said to be mandatory upon appellant, is as follows: "A majority of the directors of any railroad corporation now incorporated or hereafter to be incorporated by the laws of this State, shall be citizens and residents of this State."

It is insisted, and has been held, that the power given to a railway corporation to form a union or consolidation with another railway corporation, is a contract between the State granting the power, and the corporation, which, after the right of consolidation has been exercised, can not be withdrawn or impaired by the State. (*Zimmer* v. *The State*, 30 Ark. 677. See, also, *Central Railroad and Banking Co.* v. *Georgia*, 92

U. S. 665.) In the view we entertain of this case, it will not be necessary to discuss or determine the question whether appellant corporation acquired such rights by virtue of consolidation as would bring it within the inhibition of the constitution of the United States against the impairment of contracts by the State, and we therefore express no opinion in respect thereto.

The view of this case which we regard as decisive, involves a construction of this State constitutional provision, and the determination of the question as to whether appellant corporation falls within its letter or spirit. This will necessarily involve a consideration of the *status* of appellant corporation at the time of the adoption of the constitution now in force. The constitution was adopted in 1870, and the record leaves no question but that the consolidation of the Ohio and Mississippi Railway Company of Illinois, with the corporation of the same name existing in the States of Indiana and Ohio, was consummated in the year 1867. The Ohio and Mississippi railway of Illinois was incorporated by an act of the legislature of Illinois in 1861. (Private Laws, 1861, p. 508.) The object of the incorporation was declared to be "for the purpose of purchasing and taking a conveyance of all the railway property, real and personal, rights and franchises, of the Ohio and Mississippi Railroad Company, (incorporated by act of February 12, 1851,) or in any part of said property, rights and franchises, either by private contract or at any judicial sale thereof" thereafter to take place. The grant was, that "the said corporation shall possess all the powers and privileges conferred on the Ohio and Mississippi Railroad Company by the act incorporating the same, * * * or by any amendment or amendments thereof, and shall be subject to all provisions of said act." Thirteen incorporators were named, from whom alone the first board of directors were to be selected, and who were not, as the answer avers, citizens and residents of the State of Illinois. The act of 1851, and which, by ref-

erence in the act of 1861, is made the charter of the said Ohio and Mississippi Railway·Company of Illinois, (Private Laws, 1851, p. 89) authorized the corporation to locate, construct and maintain a railroad, with one or more tracks, from Illinoistown, on the Mississippi river, (now East St. Louis,) east to the Illinois State line, "in the direction of the city of Vincennes," in Indiana. The powers of the corporation were vested in a board of directors of not less than seven nor more than seventeen, and the first board of directors, composed of thirteen members, were individually named. In addition to other powers granted, it was provided that "said company shall have the power to unite its railroad with any other railroad now constructed, either in this State or the State of Indiana."

Under its charter, the Ohio and Mississippi Railway Company of Illinois organized, and became the owner of the line of railway from East St. Louis to the Illinois State line opposite the city of Vincennes, in Indiana, and became vested with the powers, franchises and privileges of the Ohio and Mississippi Railroad Company of 1851, and possessed and operated its railway to and until 1867. In the year last named the Ohio and Mississippi Railway Company of Illinois became consolidated with the Ohio and Mississippi Railway Company, an Indiana corporation, and also with the Ohio and Mississippi Railway Company, an Ohio corporation, whereby the consolidated corporation, under·the common name, of the Ohio and Mississippi Railway Company, became the owner of and operated a consolidated and continuous line of railway from East St. Louis, in Illinois, to Vincennes, in Indiana, and thence eastward to the city of Cincinnati, in Ohio; and the property, stock and franchises of the three constituent corporations in the three States became merged in the consolidated corporation, the corporate powers of which were exercised by one management, and a single, common board of directors. And the right of the Illinois corporation thus to consolidate its property, stock and franchises with corporations in the States

of Indiana and Ohio, was acquired and exercised, as the answer avers, under and in conformity with "the laws of the State of Illinois, and of similar laws of Ohio and Indiana."

"The laws of the State of Illinois" here referred to, are, first, the act of 1851, before referred to, and which, by reference and adoption, became the charter of the Ohio and Mississippi Railway Company, incorporated under the act of 1861, except as the same was modified by the latter act, in which, as we have seen, the Ohio and Mississippi Railroad Company was authorized and given power "to unite its railroad with any other railroad now constructed, either in this State or the State of Indiana ;" and second, the act of February 28, 1854. (Laws 1854, p. 9; 1 Gross' Stat. p. 537, sec. 15, *et seq.*) Under this latter act, railroad companies then or thereafter organized, having their termini fixed by law, and whose roads are intersected by continuous lines, were "authorized and empowered to consolidate their property and stock with each other, and to consolidate with companies out of this State, wherever their lines connect with the lines of such companies out of this State." The consolidating companies might, it was provided, agree upon a name "of such consolidated company," and by such name should be "a body politic and corporate," having a common seal, and in such corporate name contract and be contracted with, sue and be sued, plead and be impleaded, and "have all the powers, franchises and immunities which the said respective companies shall have by virtue of their respective charters before such consolidation."

It seems clear to us, that under this latter act railroad companies organized under the laws of this State, and whose lines of railway so intersect as to constitute a continuous line within this State, might consolidate their property, stock, rights and franchises, and thereby constitute a new corporation, under a new name, possessing the property, rights, powers and franchises of the constituent companies, as given by their charters ; and that upon the consummation of such consolidation, the

constituent companies, as independent legal entities, would cease to exist; and that all the duties and obligations of the constituent companies, whether to the public or to private persons, would be cast upon and must be assumed and discharged by the new consolidated corporation.    The power of the State to authorize the consolidation of corporations of its own creation, with the effect stated, has everywhere been admitted, and many cases are to be found in the books where this principle is recognized.    See *Ruggles* v. *The People,* 91 Ill. 256, (affirmed by the Supreme Court of the United States, 108 U. S. 526;) *Shields* v. *Ohio,* 95 U. S. 319; *Bishop* v. *Brainerd,* 28 Conn. 289.

But does a like power exist in two or more States, in respect of railway corporations incorporated by them, respectively, to authorize the consolidation of such corporations?    If so consolidated by authority of the States of their creation, respectively, what legal result follows?    Is the consolidated corporation a *new* corporation, or only an association of corporations under a common name?    If the result be the creation of a new corporation, do the original corporations cease to exist?    What property rights, powers and franchises does the new corporation acquire, and what duties, obligations and liabilities to the respective States does it assume?    This court has, in the following cases, had occasion to express itself as to the effect of such consolidations, but in every instance the question has arisen collaterally, and not in a direct proceeding.

The Quincy Bridge Company was incorporated by the State of Illinois, and also by the State of Missouri, for the common purpose of the construction of a bridge across the Mississippi river.    The two companies entered into articles of consolidation, which were legalized by the legislature of Illinois.    In speaking of such consolidation, this court, in *Quincy Bridge Co.* v. *Adams County,* 88 Ill. 615, said: "The legislatures of this State and of Missouri can not act jointly, nor can any legislation of the last named State have the least effect in creating

a corporation in this State. Hence, the corporate existence of appellants, considered as a corporation of this State, must spring from the legislation of this State, which, by its own vigor, performs the act. The States of Illinois and Missouri have no power to unite in passing any legislative act. * * * The only possible *status* of a corporation acting under charters from two States is, that it is an association incorporated in and by each of the States, and when acting as a corporation in either of the States, it acts under the authority of the charter of the State in which it is then acting, and that only,—the legislation of the other State having no operation beyond its territorial limits." This was said, it must be observed, in a case where the question was, whether the capital stock of the corporation was subject to taxation under the revenue laws of this State; and it was there held, that the bridge company was a corporation within this State, within the meaning of the laws of this State imposing taxation upon domestic corporations. It does not appear from the case, as reported, whether the capital stock which it was sought to bring under the operation of our Revenue law, was that which had been issued by the consolidated corporation, or, indeed, whether the articles of consolidation contemplated such an issue, nor is it in any way important. The language employed by the court, however, negatives the idea that the effect of the consolidation was the creation of a *new* corporation, and affirms the doctrine that the consolidation was but an association of the two constituent corporations, the contracting corporations retaining their legal existence and identity. It could, however, as affecting the question under consideration in that case,—as we shall hereafter see,—be of no importance whether a new corporation was created by the act of consolidation or not.

This court also had before it the case of *Racine and Mississippi Railroad Co.* v. *Farmer's Loan and Trust Co.* reported in 49 Ill. 331, involving the validity of a mortgage executed by the consolidated corporation upon the property in both

States. The Racine, Janesville and Mississippi Railroad Company, incorporated by Wisconsin, was consolidated with the Rockton and Freeport Railroad Company, incorporated by Illinois. The latter corporation was, by its charter, authorized to consolidate its stock with that of any Wisconsin corporation. The object of the consolidation was, by the articles of consolidation, declared to be, "to fully merge and consolidate the capital stock, powers, privileges, immunities and franchises of the two corporations." After consolidation, the legislatures of the two States changed the names of the constituent corporations, respectively, to the Racine and Mississippi Railroad Company. Afterwards, another Illinois corporation, the Savanna Branch Railroad Company, became a party to the consolidation, and the legislature of Illinois changed its name to the Racine and Mississippi Railroad Company, and declared the several acts of consolidation legal and binding. In that case it was said: "Our view of the effect of the consolidation contract between the Rockton company and the Wisconsin company, which we hold to have been legally made, is briefly this: While it creates a community of stock and of interest between the two companies, it did not convert them into one company, in the same way and to the same degree that might follow a consolidation of two companies within the same State. * * * But the contract of consolidation, and the subsequent legislation, created substantially a new corporation, with a new name; but such corporation, in a legal point of view, was, and has remained, a distinct corporation in each State, though the two have a common name, common stock and a common board of directors. There is a Wisconsin corporation under the name of the Racine and Mississippi Railroad Company, and there is an Illinois corporation of the same name, and the original corporations in each State have been transmuted into these." And upon this view the validity of the mortgage was sustained. It is apparent that precisely the same result was reached as if the court had held that a new

corporation had been created by the articles of consolidation. We do not, therefore, consider the case as in conflict with the views hereafter expressed.

The position assumed by the court in the cases referred to, that a corporation can not be created by the joint legislation of two States, so as to be the same legal entity in both States, may be conceded. Joint acts of legislation by two or more States are impossible; and one State can not, without the consent of Congress, "enter into any agreement or compact with another State." (Const. U. S. art. 1, sec. 10, clause 3.) But it does not follow, as is assumed in the case last referred to, that a corporation *de jure*, as well as *de facto*, can not be created, with the consent and under the authority of two or more States, by the voluntary consolidation of corporations created and existing by virtue of the laws of such States, respectively. The contrary view seems to have been entertained by this court in the last case before it, (*Cooper* v. *Corbin*, 105 Ill. 224,) where it was said: "The Indianapolis, Bloomington and Western Railway Company was formed * * * by the consolidation of the Indianapolis, Crawfordsville and Danville Railroad Company, a corporation created under the laws of Indiana, and the Danville, Urbana, Bloomington and Pekin Railroad Company, a corporation organized under the laws of this State. The consolidation was effected in conformity to the charter of the last named company and the laws of this State, and the new corporation, by virtue of the consolidation, became clothed with all the rights, privileges and powers which had been conferred by the laws of the State upon the Danville, Urbana, Bloomington and Pekin Railroad Company." In this case, as in the *Quincy Bridge Company case,* none of the adjudged cases are referred to, and the court had no apparent intention of laying down a rule which should bind the court in a direct proceeding, such as the one now under consideration. We have, therefore, felt at liberty to consider the authorities. A careful examination has satisfied us that the current and

weight of authority establish the principle, that upon the consummation of such consolidation, authorized by the laws of the States creating the constituent corporations, a new corporation will be created. *St. Louis, Iron Mountain and Southern Railway Co.* v. *Berry*, 113 U. S. 465; *Shields* v. *Ohio*, 95 id. 319; *Graham* v. *Boston, Hartford and Erie Railroad Co.* 118 id. 161; *Covington and Cincinnati Bridge Co.* v. *Mayer*, 31 Ohio St. 317; *Bishop* v. *Brainerd*, 28 Conn. 289; 2 Morawetz on Private Corp. secs. 1000, 1001. The acts of the States authorizing and consenting to the consolidation, are acts of incorporation. (*State* v. *Maine Central Railroad Co.* 66 Maine, 488,—affirmed by the Supreme Court of the United States in 96 U. S. 499.) And the new corporation will possess, necessarily, every requisite corporate attribute. Its capital stock, corporate name and organization, board of directors, officers and managers, will be such as may be authorized by the articles of consolidation and the acts of the respective States. The new corporation will, as was said in *Minot* v. *Philadelphia, Wilmington and Baltimore Railroad Co.* 18 Wall. 206, become vested with "the rights and privileges which the original companies had previously possessed under their respective charters, —the rights and privileges in Maryland which the Maryland company had enjoyed, and the rights and privileges in Delaware which the Delaware company had there enjoyed,—not to transfer to either State, and enforce therein the legislation of the other.     *     *     *     The new company stood, in each State, as the original company had previously stood in that State, invested with the same rights and subject to the same liabilities." Unlike a corporation created by a single State, which can not migrate or legally exist outside of the territorial limits of the State of its creation, the consolidated corporation, having a capital stock which is a unit, and only one set of stockholders who have an interest, by virtue of their ownership of shares of such stock, in all of its property everywhere, and a single board of directors, will have its domicile in each State,

and the stockholders, directors and officers can, in the absence of any statutory provision to the contrary, hold meetings and transact corporate business in either of the States, though in its relation to either State the consolidated company will be a separate corporation, governed by the laws of that State as to its property therein, and subject to taxation in conformity with the laws of such State, and to all the police power of the State in respect of its property and franchise within such State. *Graham* v. *Boston, Hartford and Erie Railroad Co.* 118 U. S. 161; *Covington and Cincinnati Bridge Co.* v. *Mayer,* 31 Ohio St. 317; *Sprague* v. *Hartford, Providence and Fishkill Railroad Co.* 5 R. I. 233; Pierce on Railways, 20; *Minot* v. *Philadelphia, Wilmington and Baltimore Railroad Co. supra.* And the same rule, as to domicile, seems to apply to a case where two corporations are created by adjoining States for the improvement of a river forming the common State boundary. "Under the joint act of two States, the powers conferred, to be exercised for the benefit of both, may be exercised in either. The act does not require the business to be done in either State, as regards the action of the directors. The work is to be done in both." And so it was held, the corporation might be sued in either State. *Culbertson* v. *Wabash Navigation Co.* 4 McLean, 544. And to the same effect is *Chicago and Northwestern Railroad Co.* v. *Chicago and Pacific Railroad Co.* 6 Biss. 219.

Whether, upon the creation of the consolidated corporation, the constituent corporations of the different States cease to exist, the authorities are, in the main, agreed. They do not necessarily cease to exist, although they lie dormant, and their property, rights, powers and franchises are possessed and exercised by the new consolidated corporation. *Farnum* v. *Blackstone Canal Co.* 1 Sumn. 62; *Tagart & Bennett* v. *Northern Central Railway Co.* 29 Md. 557; *Central Railroad and Banking Co.* v. *Georgia,* 92 U. S. 667. "In regard to the effect of such a consolidation, it does not necessarily follow that it

would extinguish, to all intents and purposes, the existence of those corporations. It is possible for them still to subsist for certain purposes, notwithstanding they should be thus amalgamated." *Bishop* v. *Brainerd*, 28 Conn. 289.

If we are correct in this, upon the consummation of the consolidation, in 1867, of the three companies named, into appellant corporation, it became a new corporation, existing by virtue of the act of consolidation, under the sanction and by the authority of the three several States in which the constituent companies had been chartered, while its charter privileges, powers and obligations within the State of Illinois were prescribed and limited by the charter of the Illinois corporation entering into the consolidation. While, therefore, in a sense, it may be said that appellant is incorporated under the laws of this State, it must also be said it exists by virtue of the laws of the States of Illinois, Indiana and Ohio, authorizing and consenting to its organization. The corporation chartered by the act of 1861 was merged in the consolidation of 1867, and its right to exercise corporate functions must lie dormant at least during the existence of the consolidation. This was the *status* of appellant and of the constituent company in Illinois at the time of the adoption of the constitutional provision before referred to and quoted.

This constitutional provision, by its terms, applies only to such railroad corporations as are "now incorporated or hereafter to be incorporated by the laws of this State." It would seem that no construction of these words was necessary to demonstrate the inapplicability of the constitutional provision to appellant corporation, or those standing in like relation to the State. It is insisted, however, by appellee, that as appellant corporation derives its vitality from the act of the State consenting to the consolidation, and its charter, powers and duties within this State are measured by the act of 1861 creating the Ohio and Mississippi Railway Company of Illinois, it falls within the spirit of the constitution, and must, there-

fore, have a majority of its board of directors citizens and residents of this State.

The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it. This intent is to be found in the instrument itself, from the words and phrases employed. The presumption is, that the language employed was intended to have its ordinary and usual meaning, and to be sufficiently perspicuous within itself to convey the intent. And "where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and, consequently, no room is left for construction." (*United States* v. *Fisher*, 2 Cranch, 358; Cooley's Const. Lim. 68.) And it is only when, after a consideration of the language employed, there are still doubts and ambiguities as to the meaning of the law making power, that extrinsic circumstances may be resorted to in aid of construction.

As has been seen, appellant corporation is no more a corporation existing under the laws of Illinois than it is a corporation chartered by the laws of Indiana or of Ohio. To hold that the constitutional provision is applicable to appellant corporation, would be to determine that the framers of that instrument, in drafting and submitting this section, and the people in adopting it, intended that the State of Illinois should break faith with her sister States, and should become a despoiler of private right, for, on the faith of the legislation of Illinois, the other States had, by like legislative action, authorized corporations existing as domestic corporations in those States to unite their property and franchises with a corporation of this State, whereby both public and private rights were greatly affected. Upon the consummation of the consolidation, bonds and stocks of the new consolidated corporation were issued, secured by mortgages upon the consolidated line, its property and franchise, and the liens on the constituent lines discharged. The terms and conditions of the articles of con-

solidation are not set out in the answer, but it is manifest, from what is disclosed, that the legal effect of the consolidation, which, it is averred, was consummated, was to transfer to the new corporation the property of the three constituent companies, wherever it might be located.

When the new corporation issued its stock, it was put upon the markets of the world, and the persons becoming owners thereof acquired an interest, measured by the shares of stock owned by them, respectively, in the franchise and property of the new corporation. No restriction was placed upon its ownership, and all persons, everywhere, were at liberty to acquire it. Although the corporation was a *quasi* public one, its property was the property of its stockholders, and, subject to the general regulation and police power of the States in which the corporation was situate, the owners of the railway property stood on an equal footing with the owners of other species of property, as to its right of control and management. An essential element of the consent and authority given by the State to the consolidation was, the right of the Illinois corporation to acquire, under the laws of the other States named, an interest in property situate beyond the limits of this State, and forming an integral part of a great railway thoroughfare, with a right to issue its bonds and stock, based on the property of the railway in the three States, whose domestic corporations were the constituent elements of such new company. The object to be attained was the corporate union of properties and interests in different States, under the management and control of a single board of directors, thereby securing the concerted and harmonious operation of a through line of railway from St. Louis to Cincinnati. If effect is to be given to the words of the constitution as contended by appellee, the consolidated corporation must necessarily be dissolved, unless the States of Ohio and Indiana acquiesce in the assumption by this State of jurisdiction over the *personnel* of the directory, and also unless the owners of appellant's stock consent to become citi-

zens and residents of Illinois in sufficient numbers to constitute a majority of the directory, and a majority of the stockholders consent to commit the interests of the corporation to such resident stockholders. If all this could not be attained appellant must forfeit its charter in this State, and its property here, as well as its interest in this continuous line of railway, be lost to those interested therein. Such construction would place this State in the condition of repudiating its acts, upon the faith of which sister States have acted, and upon which private interests have been acquired. And although States may not enter into formal treaties and conventions, or agreements and compacts, they may, and, we venture to say, should, be exemplars of good faith and fair dealing, by faithfully observing such obligations as legitimately spring from their cooperating legislation.

The framers of the constitution must be presumed to have known of the *status* of appellant, and its relation to the State, at the time the language referred to was selected; and if they had intended the dissolution and destruction of appellant corporation, as then existing, it is also to be presumed they would have used language expressive of such intent. The language employed applies only to corporations existing by virtue of the laws of this State, and finds ample scope for application to the multitude of corporations thus existing. No reason has been suggested, nor has any occurred to us, for extending the language of this constitutional provision beyond its plain and obvious meaning; and especially would this be so in view of the results that would follow the more latitudinous construction contended for by appellee. What would be the effect upon like corporations brought into existence since the declared policy of the State, as expressed in this constitutional provision, is not before us, and need not now be discussed or determined.

We are of opinion that appellant corporation does not fall within the constitutional provision quoted, and that the circuit

court therefore erred in sustaining the demurrer to the answer, and in rendering judgment against appellant. The judgment will therefore be reversed, and the cause remanded.

*Judgment reversed.*

Mr. Justice Scott: I am not prepared to concur in this opinion.

Mr. Justice Magruder: I do not concur in this opinion. The doctrine, which it announces, is, to my mind, an exceedingly pernicious one. The tendency of its reasoning is to exonerate railroad companies from their obligations to obey the laws and constitutions of the individual States, if they make arrangements for consolidating and uniting their lines with railroads in adjoining States. Our constitution of 1870 says: "A majority of the directors of any railroad corporation, *now incorporated* or hereafter to be incorporated by the laws of this State, shall be citizens and residents of this State." The meaning of these words is plain. The idea, conveyed by them, is as clearly expressed as any idea can be expressed by human language. The Ohio and Mississippi Railway Company was a railroad corporation incorporated by the laws of this State when the constitution of 1870 was adopted. In my opinion, it should be required to obey the mandate of the organic law as above quoted. The charter granted to it by the State of Illinois in 1861 contained no provision, that a majority of its directors might or should be non-residents of this State or citizens and residents of other States than Illinois. There was no contract between it and the State of Illinois, that a majority of its directors should be citizens and residents of other States. The existence of such a contract can not reasonably be presumed either from the fact, that a majority of the original incorporators named in the charter happened to be non-residents of Illinois, or from the fact, that there was, in 1867, a consolidation with other roads in adjoining States.

under legislation, then existing, which permitted such consolidation. Therefore, it can not be said that the enforcement of the constitutional provision against appellant will impair the obligation of a contract.

If the views of this decision are to prevail, then any corporation can defy the constitution and laws of the State, which gives it its existence, by uniting itself to some corporation in another State and then claiming to be the creature of two States.