THE QUINCY RAILROAD BRIDGE COMPANY

*v.*

THE COUNTY OF ADAMS.

|     |     |
| --- | --- |
| 88  | 615 |
| 123 | 478 |
| 123 | 481 |
| 88  | 615 |
| 44a | 191 |
| 88  | 615 |
| 161 | 142 |

1.  CONFLICT OF LAWS—*creating the same corporation by two States—by which State incorporated.*   The States of Illinois and Missouri have no power to unite in passing any legislative act, and can not fuse themselves into a single sovereignty, and as such create a body politic which shall be a corporation of the two States, without being a corporation of each State, or of either.

2.   The legislation of a State bordering on this can not have the least effect in creating a corporation in this State. . Where a company was chartered by this State to build a bridge across the Mississippi river at a given place, and a similar charter was granted by the State of Missouri for the same purpose, and the two companies consolidated, and the consolidation was recognized and approved by the legislature of this State, it was *held*, that the only proper *status* of the company was, that it is an association incorporated in and by each of the States, and when acting as a corporation in either of the States, it acts under the authority of the charter of the State in which it is then acting, and that only, the legislation of the other State having no operation beyond its territorial limits.

3. SAME—*capital stock of such corporation—where taxable.* The Quincy Rail-road Bridge Company, across the Mississippi river at Quincy, originally chartered as two distinct companies by. the legislature of this State and that of Missouri, and consolidated by articles which were confirmed and approved by the legislature of this State, is an association incorporated under our laws, in the sense of the Revenue law authorizing the taxation of its capital stock.

4. TAXATION—*statute relating to bridge companies, construed.* The act of May 1, 1873, entitled "An act to provide for the assessment and taxation of bridges across navigable waters on the borders of this State," does not exempt the companies owning such structures from the payment of taxes upon their capi-tal stock. Its sole object is to declare such structures real estate, for the pur-poses of sale for taxes of the corporation.

5. SAME—*capital stock defined.* Under the revenue laws of this State, capi-tal stock, or that kind of property designated as such, is not the identical lands, chattels and other articles of property held by a corporation. It means, not shares of stock, either separately or in the aggregate, but one intended to designate the property of the corporation subject to taxation, not in separate parcels, but as an homogeneous unit, partaking of the nature of personalty, and subject to the burdens imposed upon it at the domicil of the owner, which is where it exercises corporate functions and where its business is done.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

Messrs. WHEAT, EWING & HAMILTON, for the appellants.

Messrs. WHEAT & MARCY, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of debt, brought to the Adams circuit court, by the county of Adams, plaintiff, and against the Quincy Railroad Bridge Company, defendants, to recover a tax assessed against the capital stock of the bridge company for the year 1874, for county purposes. There were two spe-cial counts and the common counts in the declaration, to which the defendants pleaded seven pleas: 1. *Nil debet.* 2. *Nul tiel corporation* as to the bridge company. 3. That it is a cor-poration created and existing under the laws of this State and of the State of Missouri, and not otherwise. 4. That defend-ant is a corporation created for the purpose of constructing

and maintaining a railroad bridge over and across the Mississippi river, under the laws of Illinois and Missouri, the said river forming a boundary between these States, and that the corporate powers and existence of the defendant company are under and by virtue of the laws of this State only in part. 5. That no proper demand was ever made for the supposed taxes prior to the commencement of this suit.   7. That the collection of this tax was heretofore enjoined by an order of the Circuit Court of the United States for the Northern District of Illinois in a suit therein, in which one Nathaniel Thayer was plaintiff, and Edwin Cleveland, then the collector of Adams county, and this bridge company, were defendants, which order is still in force.   The court sustained a general demurrer to these special pleas.   Leave was given to amend the seventh plea, which was done by setting out more fully the injunction allowed by the circuit court of the United States, and to this amended plea a general demurrer was sustained by the court.   The cause then proceeded to trial, which resulted in a judgment in favor of the county for the amount of taxes claimed.   To reverse this judgment the bridge company appeal, and make the point that appellants are not a company or association incorporated under the laws of this State in the sense or spirit of the law authorizing the taxation of capital stock.

The demurrer to the special pleas clearly presents this question, and it has been argued elaborately and ably by counsel: Are appellants a corporation so created under the laws of this State as to bring it under the operation of the fourth clause of section one of the Revenue act of 1872?

The first section provides that the property named in this section shall be assessed and taxed, except so much as in this act may be exempted: *First,* all real and personal property in this State. *Second,* all moneys, credits, bonds or stocks, etc.   *Third,* the shares of capital stock of banks and banking companies doing business in this State. *Fourth,* the capital

stock of companies and associations incorporated under the laws of this State.    Rev. Stat. 1874, p. 857.

Appellants give the history of the creation of their company, by which it will be seen that by an act of the General Assembly of this State, approved February 10, 1853, and renewed by act of February 15, 1865, the Railroad Bridge Company was incorporated.    By an act of the legislature of the State of Missouri, date not given, the "Quincy Bridge Company" was incorporated, the object and purpose of both these incorporations being to construct and operate a railroad bridge across the Mississippi river at Quincy, in this State, such object not being attainable by either company separately or by virtue of the authority thus granted by either State, the river being a common boundary, and the territorial line of neither State extending beyond the main channel of the river.    Appellants say, in order to render either of these charters available, it became necessary to consolidate the two companies, and to secure for the company thus consolidated the consent and approval of each of said States, and the permission of the government of the United States to throw a bridge across one of its navigable rivers.

On November 20, 1866, articles of agreement were entered into by these two companies thus incorporated, one by this State, the other by the State of Missouri, to consolidate, and such articles, duly filed and recorded in the office of the Secretary of State of this State, effected the consolidation of these two companies, and such consolidation was approved and legalized by the General Assembly of this State by an act, approved February 6, 1867, entitled "An act to legalize the Quincy Railroad Bridge Company, and to facilitate and encourage the construction of a railroad bridge over the Mississippi river at Quincy."    The first section of this act recognizes the consolidation of these two independent companies and their origin, and refers to the articles of consolidation on file in the office of the Secretary of State of this State, and the name and style of the Quincy Railroad Bridge Company was

bestowed upon it, and there was conferred upon it all the rights, powers, privileges and immunities which were granted to the railroad bridge company by the act incorporating the same in 1853, and renewed in 1865.

The consolidation of these companies is expressly recognized, and by the second section the company, as now existing, is fully recognized after the consolidation as a corporation. What is wanting to make appellants a corporation created by the laws of this State, we are unable to see.

But it is said by appellants, this corporation, although it derived some of its powers and in part its corporate existence from this State, derived an equal part from the sovereign State of Missouri, and therefore they are not a corporation created under the laws of either State. To this it is answered, and we think satisfactorily, that the legislatures of this State and of Missouri can not act jointly, nor can any legislation of the last named State have the least effect in creating a corporation in this State. Hence, the corporate existence of appellants, considered as a corporation of this State, must spring from the legislation of this State, which, by its own vigor, performs the act. The States of Illinois and Missouri have no power to unite in passing any legislative act. It is impossible, in the very nature of their organizations, that they can do so. They can not so fuse themselves into a single sovereignty, and as such create a body politic which shall be a corporation of the two States, without being a corporation of each State or of either State. As argued by appellee, the only possible *status* of a company acting under charters from two States is, that it is an association incorporated in and by each of the States, and when acting as a corporation in either of the States it acts under the authority of the charter of the State in which it is then acting, and that only, the legislation of the other State having no operation beyond its territorial limits. We do not, and can not, understand that appellants derive any of its corporate powers from the legislature of the State of Missouri, but wholly and entirely derived from the General As-

sembly of this State. Consequently they are embraced in the first section of the Revenue act, above cited.

It is argued by appellants, that the framers of the Revenue act of 1872 did not intend to include them in the general designation of "companies or organizations incorporated under the laws of this State," and this is apparent from the fact, that within a year after that law went into effect the legislature provided, in explicit terms, for the taxation of the property of the class of corporations to which their company belongs.

The reference is to the act of May 1, 1873, entitled "An act to provide for the assessment and taxation of bridges across navigable waters on the borders of this State."

We do not perceive this act has any relation to the question raised on this record. The act applies solely to bridge structures, and capital stock is not mentioned in it. The sole object, as appears from its various clauses, especially the emergency clause, was to declare such structures real estate, they, before that time, having been regarded as personal property. This is seen by section 15 of the "act for the assessment of property and for the levy and collection of taxes," in force July 1, 1872. That section provides, that the track, road or bridge shall be held to be personal property, and listed and assessed as such in the town, district, village or city where the same is located or laid. Sess. Laws, 1872, p. 5.

The emergency clause in the act of 1873 conclusively determines the purposes for which the act was passed. That clause is as follows: "Whereas, by existing law, such bridge structure can not be sold for delinquent taxes, so as to convey a good title thereto, therefore an emergency," etc. Nothing appears in any of the provisions of this act expressly or impliedly exempting the companies owning such structures from the payment of taxes upon their capital stock.

It is further argued by appellants, that the legislature intended to limit the tax of capital stock to companies exercising corporate powers wholly and solely under the laws of this State. Appellants say this is evident from the fact that the

capital stock of companies existing in part by virtue of the laws of a sister State, can not be equitably assessed or collected.

We fail to perceive this supposed dilemma. Precise and exact equity can not, perhaps, be done to any corporation in the assessment of its capital stock, but there can be no more difficulty in doing so with such a corporation as appellants, than with any other corporation, and although the capital stock of appellants may designate its entire property, as well in Missouri as in this State, the same may be said of all other corporations having property in different States. This is no reason why the capital stock should not be taxed at all. Suppose, as suggested by appellants, the capital stock of appellants should be assessed and taxed by the authorities of the State of Missouri, would it follow the law of our State is therefore invalid and must not be enforced? Capital stock, or that kind of property designated as such, is not the identical lands, chattels and other articles of property possessed by the corporation, but as this court defined it, in *Porter et al.* v. *Rockford, Rock Island and St. Louis R. R. Co.* 76 Ill. 561, means, as used in the act of 1872, not shares of stock, either separately or in the aggregate, but one intended to designate the property of the corporation subject to taxation, not in separate parcels, but as an homogeneous unit, partaking of the nature of personalty, and subject to the burdens imposed upon it at the domicil of the owner.

Who, in this case, is the appellant corporation, and whose domicil is here, where it exercises corporate franchises, where its business is done, where its franchises are exercised, and where it is engaged in the prosecution of the corporate enterprise? *Bristol* v. *Chicago and Aurora R. R. Co.* 15 Ill. 436. However this corporation may be treated by the authorities of the State of Missouri, the authorities of this State must regard and treat the company as domiciled here, and liable to taxation upon all its property which is of such a nature as to be taxable at the residence of the owner. There is no evidence

in the record that appellants have been over-assessed or taxed, or that the slightest injustice has been done to appellants.

There is no need to pursue this discussion farther. We hold appellant is a corporation created under the laws of this State, and its capital stock properly taxable, and properly assessed and taxed, and the judgment of the circuit court was right and must be affirmed.

*Judgment affirmed.*