STATE TREASURER, RELATOR v. AUDITOR GENERAL.

*Taxation of railway companies running partly in other States—Consolidation—Foreign companies.*

The Michigan Southern Railway Company was established by the State of Michigan under a special charter which defined the basis on which it was to be taxed. The State afterwards authorized it to consolidate with the Northern Indiana Railroad Company, with no change in the basis of taxation, and a general railroad law was passed at about the same time. This law, and various similar acts afterwards passed, provided that companies within the State might consolidate with companies in other States, and that every corporation formed under the law should be taxed at a certain rate. The Michigan Southern and Northern Indiana Company meanwhile became part of the Lake Shore and Michigan Southern Railway Company under consolidation agreements with corporations in other States through which the route of the consolidated company lies and in which its business is done. A writ of *mandamus* sought for by the State Treasurer to compel the Auditor General to assess the company under the general law was denied; it is not a corporation formed under that law, and taxes are properly assessed upon the basis fixed by the original special charter.

A State cannot tax the whole track and equipments, the gross earnings, or the entire capital stock of a road which lies partly without its boundaries, and is partly operated in other States. It can only tax that part of the road property which lies within its jurisdiction, or the proportion of stock representing that part of the road.

A tax upon the gross earnings of a railway company whose road is partly outside of the jurisdiction, is illegal, not only because of the want of jurisdiction, but because it is not levied upon a rule of equality with corporations whose business is wholly in the State.

The State has the same power to authorize several existing corporations to associate themselves together and organize themselves into a new corporation, as it has to incorporate individuals.

A corporation is a creature of the sovereign will, and when created by one sovereignty it can operate within another's limits only by the latter's express permission, or by permission implied from principles of comity, but such permission does not make it any the less a foreign corporation.

Mandamus.    Submitted June 7–8.    Denied June 15.

Attorney General *Jacob J. Van Riper* and *Fitch R. Williams* for relator.   Corporations can be consolidated only by virtue of law and with legislative consent: *State v. Bailey* 16 Ind. 46; *N. Y. & Sharon Canal Co. v. Fulton Bank* 7 Wend. 412; the courts of Michigan have treated corporations formed by consolidation of companies under the general railroad law as new corporations, even where one has been merged in another: *Mansfield, Coldwater & Lake Mich. R. R. v. Drinker* 30 Mich. 124; *Swartwout v. Mich. Air Line R. R.* 24 Mich. 404; *Tuttle v. Mich. Air Line R. R.* 35 Mich. 247; *Detroit, Lansing & Lake Mich. R. R. v. Starnes* 38 Mich. 698; *Marquette, Houghton & Ontonagon R. R. v. Langton* 32 Mich. 252; *State v. Maine Central R. R.* 66 Maine 488; *Hamilton Mut. Ins. Co. v. Hobart* 2 Gray 543; *Commonwealth v. Atlantic & Gt. Western Ry.* 53 Penn. St. 9; *State v. Sherman* 22 Ohio St. 411; *Shields v. State* 26 Ohio St. 86; *Shields v. Ohio* 95 U. S. 319; *Clearwater v. Meredith* 1 Wal. 40; by such consolidation there was a voluntary surrender of all rights of exemption from taxation provided for the original corporations, and the new company at once became subject to the general railroad law: *Railroad Co. v. Maine* 96 U. S. 499; *Railroad Co. v. Georgia* 98 U. S. 359; *McMahan v. Morrison* 16 Ind. 172; *Lauman v. Lebanon Valley R. R.* 30 Penn. St. 42; intention to exempt from taxation must be explicit: *Minot v. Phil., Wil. & Balt. R. R.* 18 Wal. 206; *Farrington v. Tennessee* 95 U. S. 679; *New Jersey v. Yard* id. 104; *Com. v. Easton Bank* 10 Penn. St. 451; an express exemption from taxation lasts only as long as the charter, and if the charter is extended the power to tax is removed: *Gordon's Appeal* 3 How. 133; as to the legality of taxes upon property outside the State, see *Delaware Railroad Tax Case* 18 Wal. 206; *Erie Railway v. Pennsylvania* 21 Wal. 492; a Michigan corporation is liable to such taxes as the Legislature may constitutionally impose, whatever it pays elsewhere: *Quincy R. R. Bridge v. Adams County* 88 Ill. 615; *Racine & Miss. R. R. Co. v. Farmers' L. & T. Co.* 49 Ill. 331; *Mitchell v. Deeds* id. 416.

*Ashley Pond* for respondent. The consolidation of corporations existing under the laws of diverse States cannot result in a corporation created by the laws of one of them: *Ohio & Miss. R. R. v. Wheeler* 1 Black 286; nor does it necessarily dissolve the constituent corporations and effect the creation of a new one; the question is one of legislative intention: *Cent. R. R. & Banking Co. v. Georgia* 96 U. S. 665.

COOLEY, J. The controversy in this case concerns the proper basis for estimating the tax to be annually assessed by the State authorities against the Lake Shore & Michigan Southern Railroad Company in respect to that portion of its road in the State of Michigan. Its determination involves the construction of various statutes, but especially the General Railroad Law as originally passed and subsequently revised, and the application to this company of the provisions of that law respecting taxation.

The Michigan Southern Railroad Company was originally organized under a special charter. Laws of 1846, p. 170. The company purchased of the State an uncompleted railroad, and by its charter it was provided that "The said company shall pay to the State an annual tax of one-half of one per cent. upon the capital stock paid in, including the five hundred thousand dollars of purchase money paid, or to be paid to the State, until the first day of February, 1851, and thereafter an annual tax of three-fourths of one per cent. upon its capital stock paid in, including the five hundred thousand dollars of purchase money aforesaid, and also upon all loans made to said company, for the purpose of constructing said railroad, or purchasing, constructing, chartering or hiring of steamboats authorized by this act to be held by said company, which tax shall be paid in the last week in January in each year to the State treasurer, and the property and effects of said company, whether real, personal or mixed, shall, in consideration thereof, be exempt from all and every other tax, charge and exaction by virtue of any laws of this State now or hereafter to be in force, except penalties by this act imposed." Sec. 31.

Afterwards, in the year 1855, an act was passed by the Legislature of this State " to authorize the Michigan Southern Railroad Company to consolidate with the Northern Indiana Railroad Company." Laws of 1855, p. 300. The latter company was at that time operating a railroad from the point where the Michigan Southern Railroad at its westerly end intersected the southern boundary of the State, to Chicago, in the State of Illinois, and the consolidation would give to the consolidated company a continuous line from the eastern boundary of this State to Chicago, and also by means of the Erie & Kalamazoo Railroad, a leased road extending from Toledo, in the State of Ohio, westerly, and connecting with the line of the Michigan Southern Railroad at Adrian, a continuous line from Toledo to Chicago. One of the provisions of the act of consolidation was that " The said corporation so to be organized, by virtue of this act, shall continue subject to the same rate of tax as though such consolidation should not take place; and the amount of its capital and loans hereafter, upon which such taxation shall be paid, shall be such portion of the whole of its capital and loans as is actually employed in the State of Michigan, to be ascertained on or before the first day of January in each year, by the Auditor General of this State, from the annual report of said corporation, or from such other reports on oath as he may deem necessary for such purpose, to be ordered by him from the office of such corporation." Sec. 3.

The consolidation authorized by this act immediately took place, and the consolidated company appears to have been treated and considered as a new corporation from that time on. The same Legislature which passed this act of consolidation also passed a general law under which companies formed to construct railroads were authorized to incorporate themselves. By one of the sections of this law " every corporation formed " under its provisions was required to pay to the State an annual tax of one per cent. on the capital stock paid in. Comp. Laws 1857, p. 652.

The General Railroad Law was amended in 1869, by an

act approved April 3d of that year, and one of the amend-
ments changed the annual tax to "an annual tax of one per
cent. on the capital stock paid in," and also upon all such
sums of money "as shall from time to time be invested in
the original constructing and stocking, or in any new con-
structing or stocking of said road." Laws 1869, p. 262.
There was never any claim that up to this time the Mich-
igan Southern & Northern Indiana Railroad Company was
taxable otherwise than as provided by the charter of the
Michigan Southern Railroad Company in the section above
recited, and by the act of consolidation above mentioned.

Among other provisions of the General Railroad Law of
1855 was one that "Any railroad company in this State,
forming a continuous or connected line with any other rail-
road company, may consolidate with such other company
either in or out of this State, into a single corporation; *Pro-
vided*, That no such companies having parallel lines, or lines
diverging and converging, but being conterminous, shall be
permitted to consolidate themselves." The act pointed out
the method in which the consolidation should be effected,
and provided that when the proceedings were completed
and the consolidation agreement duly filed in the office of
the Secretary of State the consolidating corporations "shall
be merged in the new corporation provided for in such
agreement, to be known by the corporate name therein
mentioned." Laws 1855, pp. 174, 175.

After the passage of the amendatory act of 1869, and
within the same year, the Michigan Southern & Northern
Indiana Railroad Company entered into consolidation agree-
ments with certain Ohio, Pennsylvania and New York cor-
porations, whereby it was intended to form a continuous
line from Chicago to Buffalo in the State of New York,
with various branches or side lines which need not be par-
ticularly mentioned. It is assumed in this case that there
were statutes in the several States above named purporting
to authorize such consolidation agreements, and they were
carried into practical effect, and the consolidation agree-
ments duly filed with the Secretary of State at Lansing as

above provided.   The consolidated company was now called the Lake Shore & Michigan Southern Railroad Company, and it paid taxes on the same basis on which they had previously been assessed against the Michigan Southern & Northern Indiana Railroad Company.

In 1871 the laws providing for the incorporation of railroad companies were revised, and the basis of taxation was essentially changed.   Every company was thereby required to make to the Auditor General, an annual report which, among other things, should show the gross receipts of the company for the preceding year, and it was further required to pay to the State Treasurer an annual tax computed as follows:   Upon the gross receipts to the amount of $3000 or less per mile of road regularly operated, one and one-half per cent; upon the gross receipts in excess of $3000 and less than $6000 per mile, two per cent.; and upon the gross income in excess of $6000 per mile three per cent. Laws of 1871, p. 354.   No tax has ever been assessed against the Lake Shore & Michigan Southern Railroad under this law, or under the law next mentioned.

In 1873 the General Railroad Law of 1871 was revised and the basis of taxation again changed.   The railroad companies " formed under the provisions " of the revising act were required to pay an annual tax upon all gross receipts not exceeding $4000 per mile of road actually and regularly operated, two per cent.; and upon gross receipts in excess of $4000 per mile, three per cent.   But it was provided that "when a railroad lies partly within and partly without this State, there shall be paid such portion of the tax herein imposed as the length of the operated road lying within this State bears to the whole length of the operated portion thereof."   Laws 1873, p. 532.

It is now urged on behalf of the relator that ever since the consolidation of the several companies heretofore mentioned into the Lake Shore & Michigan Southern Railroad Company, the consolidated company has been liable to taxation under the several railroad laws, and that the State authorities have erred in assessing taxes as provided by the

charter of the Michigan Southern Railroad Company, or on any other basis than that from time to time prescribed by the General Railroad Law as amended and revised. And the purpose of this application is to compel the respondent, who is Auditor General of the State, to assess and collect of the Lake Shore & Michigan Southern Railroad Company a tax under this act of 1873 on the computation made for the purpose by the Commissioner of Railroads.

The capital stock paid in of the Lake Shore & Michigan Southern Railroad Company is reported at $50,000,000, and the State tax upon the company, had it been assessed according to the terms of the General Railroad Law as it stood up to 1869, would have been $500,000 annually. This is about nine times the amount now claimed as annually assessable against the company under the General Railroad Law as it now stands, and it is not pretended that it could be held to be in any sense a just tax, or a tax proportionate to what is charged against other subjects of taxation within the State. This disproportion is so great that it seems plain the Legislature never intended this enormous burden should be imposed, and it suggests the inference, if it does not require it, that the Legislature supposed the case of this company was specially provided for otherwise. It cannot be that the Legislature meant to tax other companies a certain per centage on a capital stock represented wholly by property within the State, and then to tax this company the same percentage on a capital stock represented by property by far the larger portion of which was in other States; especially when such property is permanent in its nature, and cannot by any implication of law or legal intendment be held or deemed to be property which is subject to or protected by the laws of this State. Indeed, if the intent of the General Railroad Law had been to bring this whole property within its provisions concerning taxation, it would be subject to the objection that the State was attempting by this law to reach out and subject to its sovereign power of taxation property situated in other States, liable and justly liable to taxation there, and thereby in some degree to shift the burdens of its own

government from the subjects of taxation which should justly bear them, upon other subjects which were beyond its jurisdiction, and therefore not subject to its control for any purpose.   For the State can no more tax the whole capital stock, which represents the track from Chicago to Buffalo, the rolling stock and other equipments, than it can tax the whole track and equipments.   The capital stock is taken as the basis of taxation rather than the road and equipments for reasons of convenience; but whether the one or the other is selected for the purpose the limitations of sovereignty alike apply, and the State can tax only what is within its jurisdiction, whether it be the part of the road which is within its limits or the proportion of the stock which represents that part of the road.   There may sometimes be difficulty in determining what is the just proportion of the stock which is thus taxable; but the principle is plain enough, and it is not likely the State ever intended to disregard it.

Like consequences would have attended the taxation of the railroad company under the act of 1871.   That act required the levy of taxes on a basis measured by the gross earnings of all the roads; and it made no provision whereby the gross earnings of any road whose line was partly in other states might be apportioned for the purpose of this taxation. All the gross earnings of this railroad company, therefore, accumulated by the use of its lines in New York, Pennsylvania, Ohio, Indiana and Illinois, must have been taxed within and for the benefit of the State of Michigan; and the tax would not only have been illegal, because not levied by any rule of equality as between this company and other railroad companies, and unjust from its oppressive disproportion to other railroad taxes, but it would have been clearly in excess of State power for the reason above assigned.   No State can have any authority to take advantage of the fact that a portion of a railway is within its limits to draw within its taxing power all the road or all its business.   As well might it take advantage of the temporary presence of a nonresident within its limits to compel him to pay taxes on his homestead in another State, or on his business not carried

on under the protection of its laws, or on the moneys or credits which he might chance to have about his person at the time of his visit. Any such attempt at taxation would be usurpation.

But the General Railroad Law as revised in 1873 does contain provisions whereby the tax may be apportioned when the road is partly within and partly without the State; and the objection that the State is attempting to tax property not subject to its jurisdiction will not be available against this law if we find its intent to be to bring the Lake Shore & Michigan Southern Railroad Company within its provisions. Whether the apportionment it provides for is a fair one, is questioned by counsel; but it was meant to be fair, and for the purposes of the validity of the law that was probably sufficient. The vital question is whether it was intended that it should apply to this company. Upon that question the fact that the provisions in the General Railroad Law as it before stood from time to time could not be applied, may have some bearing, since there is nothing in the wording of the act of 1873, any more than in the law at any time before, which is indicative of a clear intent that this company should come under its provisions. It is nevertheless possible that the Legislature may, at all times since the consolidation of the Lake Shore line, have intended to tax this company under the general law, and that the previous defects in the law were in mind when the act of 1873 was passed, and were intended to be cured thereby. To that act we may therefore now direct our attention.

The taxing provisions of the act of 1873 are expressly by its terms made applicable to "every company formed under the provisions" thereof. The argument on behalf of the relator is that when the consolidation of 1869 took place the Michigan Southern & Northern Indiana Railroad Company and the other companies in Ohio, Pennsylvania and New York with which it consolidated ceased to exist, and that the new company which succeeded to their corporate powers came into existence as a corporation in this State by virtue of the authority to consolidate, which was given by the Gen-

eral Railroad Law then in force, and which was revised in 1873. The company, it is said, could not otherwise have had existence in this State, and was consequently in the strictest sense a corporation "formed under the provisions" of the act revised. It must therefore have been intended by the Legislature that the act of 1873 should apply to it, for that act was inconsistent with and repealed the previous general law, with its provisions respecting taxation.

Had all the consolidated companies been corporations of this State, possessing like powers, privileges and immunities, and had they proceeded to consolidate under the act of 1873, there would have been little or no difficulty in saying that they thereby ceased to exist, and were consolidated into one corporation "formed under the provisions" of that act. A State at its pleasure may authorize two or more existing corporations to associate together and organize themselves into a new corporation, with the same full power that it exercises when it incorporates individuals. *Bishop v. Brainerd* 28 Conn. 289 : *Clearwater v. Meredith* 1 Wall. 25 ; *State v. Maine Central R. R. Co.* 66 Me. 488; s. c. in error 96 U. S. 499. There is no difficulty here, for each incorporation is effected by an exercise of the will of the same sovereign authority.

But how can it be said that the Lake Shore & Michigan Southern Railroad Company, owning and operating a line of railway in six States, and exercising within them corporate powers emanating from them all, is a corporation "formed under" the General Railroad Law of Michigan ? Why under the law of Michigan any more than under that of Ohio or that of any other State ? And what authority can the laws of Michigan have to authorize the company to operate a railroad in New York, or how can they punish a corporate misfeasance in Pennsylvania, or compel the performance of a corporate duty in Illinois ? And if in any restricted sense it be said that the consolidated company is a corporation formed under our laws because their assent was given to its formation ; then what are its powers, duties, liabilities and immunities ? May the corporation exercise within this

State powers which have been conferred in Pennsylvania or Ohio, but which our laws would expressly withhold, and is it released by the laws of New York from duties which our laws impose?

A corporation is the creature of the sovereign will. When one sovereignty creates it, it can operate within the limits of another only by the express permission of the latter, or by implied permission springing from principles of comity. If such permission were given by express law, it would not make the corporation any less a foreign corporation than before; it would still be the corporation of the State whose sovereign will had created it; and if two States should incorporate the same persons for the same purpose, with identical powers, there would in contemplation of law be two corporations deriving their authority from different sources. This would be altogether a different thing from one State granting the charter and the other giving permission for the exercise of the franchises within its limits.

The authority to consolidate the Lake Shore lines, as has been said above, was claimed under the laws of several States, and not under the laws of Michigan alone. Concede that the consolidation has resulted in one great corporation into which it has merged the others, and the fact remains that this is no more effected under the laws of Michigan than under the laws of any other assenting State. The consolidated company is not, therefore, a corporation formed under the laws of Michigan. The laws of Michigan were powerless to confer upon the new corporation all the powers and charge it with all the duties of the several old corporations: the State might consent to the consolidation, and this is all it assumed to do.

Whether by the concurrent action of all the States through or into which the Lake Shore line extends the Lake Shore & Michigan Southern Railroad Company can be said to have become a corporation in the full sense, or whether it is to be regarded as merely a corporation *de facto*, or whether the consolidation is to be considered a business union of several different railroad companies under one common name

which the laws of the several States recognize for the pur-
poses of the transaction of business, the holding of property
and the bringing of suits, or whether all the old corporations
are to be deemed still in existence and exercising their sev-
eral powers in their respective States in the name of the
consolidation, is not now important, and we do not care to
speculate on the several interesting questions that here sug-
gest themselves to our minds.    It is enough for our purposes
that the consolidated company is not in our opinion a cor-
poration "formed under" the General Railroad Law of this
State, within the meaning of that law, and that it is not,
therefore, taxable under it.    The Auditor General, we think,
has acted in strict accordance with duty in continuing to
levy the tax on the basis prescribed in the charter of the
Michigan Southern Railroad Company and the act under
which that company and the Northern Indiana Railroad
Company were consolidated.    The case is altogether differ-
ent from what it would have been had the Michigan com-
pany which entered into the consolidation been organized
under the general law.

Many questions discussed on the argument are rendered
immaterial by the conclusion we have reached.

The writ applied for must be denied.

The other Justices concurred.