THE PEOPLE OF THE STATE OF NEW YORK, PLAINTIFF,
v. THE NEW YORK, CHICAGO AND ST. LOUIS RAIL-
ROAD COMPANY, DEFENDANT.

*Organization tax of corporations — how determined upon a consolidation of a domestic
with a foreign corporation — chap. 143, Laws of 1886; chap. 685, Laws of 1881.*

In an action brought by the People of the State of New York to recover the tax
imposed, by chapter 143, Laws of 1886, as amended by chapter 284, Laws of
1887, on corporations upon their organization, it appeared that, in June, 1887, a
railroad corporation having the same title as the defendant, and running
wholly within the State of New York, was duly organized under the laws of
New York, and that its organization tax was paid; that, on August 15, 1887,
said corporation, under the provisions of chapter 917, Laws of 1869, as
amended by chapter 685, Laws of 1881, consolidated with a foreign railroad
corporation, the corporate name of the new corporation remaining the same
as that of the original New York corporation, and its capital stock being equal
to the sum of the capital stocks of both the prior corporations.

In September, 1887, this consolidated corporation was, under said act of 1869,
consolidated with two other foreign corporations, the resulting corporation
being the defendant, whose capital stock was equal to the sum of the capital
stocks of all of said corporations thus consolidated.

*Held,* that the State was entitled to recover an organization tax upon the consoli-
dated capital of the first consolidation, and also upon the consolidated capital of
the last consolidation.

That, by filing the consolidation papers of September, 1887, the defendant became
a corporation, incorporated under the general laws of the State of New York,
and that the effect of such consolidation was to create a new corporation.

That this result was not changed by the fact that two of the consolidated
corporations were foreign. (LANDON, J., dissenting.)

That if a foreign corporation chose to avail itself of the consolidation act, it,
although it might still preserve its existence in the foreign State, was liable to
pay the tax which the State of New York exacts for the privilege of its being
a corporation here.

SUBMISSION of a controversy upon a statement of facts agreed
upon between the plaintiff, the People of the State of New York,
and the defendant, the New York, Chicago and St. Louis Railroad
Company.

*Charles F. Tabor* and *I. H. Maynard,* for the plaintiff.

*Rogers, Locke & Milburn* and *Samuel E. Williamson,* for the
defendant.

LEARNED, P. J.:

On June 22, 1887, a railroad corporation was formed under the general railroad act of this State, called the New York, Chicago and St. Louis Railroad Company, with a capital of $4,500,000, which, to distinguish it from other corporations of the same name, will be called No. 3. It paid its organization tax.

On August 15, 1887, said New York, Chicago and St. Louis Railroad Company No. 3 entered into a consolidation agreement, under the statutes of New York, with the Erie and State Line Railroad Company, a corporation under the laws of Pennsylvania, by which the two corporations were consolidated into one corporation, known as the New York, Chicago and St. Louis Railroad Company, which, to distinguish it, will be called No. 2. The capital stock of No. 2 was $7,500,000, being a sum equal to the aggregate of the capital stock of the two consolidating companies.

The agreement of consolidation was duly filed that day in the office of the Secretary of State of New York. No organization tax was paid to the State.

On September 27, 1887, the New York, Chicago and St. Louis Railroad Company No. 2 and the Cleveland and State Line Company, a corporation under the laws of Ohio, and the Fort Wayne and Illinois Railroad Company, a corporation under the laws of the State of Indiana, under and in pursuance of the statutes of New York, entered into a consolidation agreement by which they were consolidated into a new corporation by the name of the New York, St. Louis and Chicago Railroad Company, which, to distinguish it, will be called No. 1. The capital stock of No. 1 was $30,000,000, a sum equal to the aggregate of the capital stock of the three consolidating companies. No organization tax was paid to the State of New York. The agreement of consolidation was duly filed with the Secretary of the State of New York.

The defendant in this case, which is the corporation above mentioned, formed by the consolidation last named and distinguished as No. 1, is exercising in this State corporate powers and exercising, or assuming to exercise, the corporate franchise of maintaining and operating a railroad from the city of Buffalo, in New York, to a point on the boundary line between Indiana and Illinois.

The plaintiff claims that there was due and payable to the Treasurer

of the State of New York from the New York, Chicago and St. Louis Railroad Company No. 2, $9,375, being one-eighth of one per cent on its capital, which is still due, with interest, from August 15, 1887, which sum this defendant is liable to pay by virtue of the agreement of consolidation.

The plaintiff claims that there was due and payable to the Treasurer of the State from the defendant the sum of $37,500, being one-eighth of one per cent on the capital stock which is still due with interest from September 27, 1887.

The question arises under the corporation tax law, chapter 143, Laws 1886, and it is presented to this court by a case submitted. Section 1 of that law is as follows: " Every corporation, joint-stock company or association incorporated by or under any general or special law of this State, having capital stock divided into shares shall pay to the State Treasurer for the use of the State a tax of one-eighth of one per centum upon the amount of the capital stock which said corporation, joint-stock company or association is authorized to have."

" And the Secretary of State and any county clerk shall not file any certificate of incorporation    *    *    *    until he is satisfied that such tax has been paid to the State Treasurer."

There is no question that the defendant has capital stock divided into shares.    The inquiry must be whether the defendant, when it filed its consolidation papers September 27, 1887, became a corporation incorporated under a general law of this State.    To determine this, we must first look at the Railroad Consolidation Act, chapter 917, Laws of 1869, as amended by chapter 685, Laws of 1881. Section 1 authorizes any railroad company " organized under the laws of this State, or of this State and any other State," " to merge and consolidate its capital stock, franchises and property with the capital stock, franchises and property of any other railroad company or companies organized under the laws of this State, or under the laws of this State and any other State, or under the laws of any other State or States."

Section 2 provides the mode and speaks of the name of the new corporation " and of the manner of converting the capital stock    *    *    *    into that of the new corporation."    It declares that a copy of the agreement of consolidation duly certified shall be evi-

dence of the existence of the new corporation. Section 3 declares that on the making, perfecting and filing of the agreement, the corporations parties thereto "shall be deemed and taken to be one corporation."

Section 4 provides that all rights and property shall be vested in the new corporation without further act or deed.

Section 5 preserves all debts and makes the new corporation liable therefor. (*Polhemus* v. *Fitchburg R. R., Co.,* 123 N. Y., 502, and 50 Hun, 397; reversing *Janes* v. *Fitchburg R. R. Co.,* 50 Hun, 310.)

The section declares that "the respective corporations shall be deemed to continue in existence to preserve" the rights of all creditors. This clause should be noticed, inasmuch as it tends to explain and harmonize, with the general scope of the acts, certain decisions of the United States Supreme Court hereafter to be mentioned. And it shows that, by the intent of the legislature, the formation of one new corporation out of two already existing is not inconsistent with a continuance, to a certain extent, of the constituent corporations.

That suits may be brought against the new corporation is provided in this section. And the very submission in this case shows that the new corporation is an artificial person; for it declares itself, in the statement of facts in the submission, to be "a domestic railroad corporation."

Section 6 provides for the taxation of the real property of such new corporation wherever situated, and for the taxation of its stock and personal property.

It is, therefore, most positively declared by the legislature that such consolidation does create a new corporation. In accordance with this, the agreement of consolidation between the constituents repeatedly declares that they form one corporation, and states when such consolidated corporation shall go into operation. It is clear, then, that prior to the time of executing and filing this agreement there was no such corporation as the present defendant. There was another corporation which had the same name and which we have designated as No. 2. But the defendant, No. 1, did not exist before that time, and does exist now. Hence it necessarily follows that the defendant is a new corporation with new duties and new

powers. And, as it obtained its existence by the authority of this New York consolidating statute, it was evidently incorporated under a general law of this State, and, therefore, it must come under the provisions of the statute imposing an organization tax. This is the plainer seen by the clause of that statute which forbids the filing of the papers by the Secretary of State until the tax is paid. The defendant desired the filing of its papers, and as a condition of such filing it is required to pay a certain tax. Plainly the State is at liberty to impose such terms as it pleases upon the filing of papers in the office of its secretary. This doctrine is distinctly laid down in *People ex rel. Schurz* v. *Cook* (110 N. Y., 443 ; affirming 47 Hun, 467).

That the effect of such a consolidation is to form a new corporation is shown in *McMahan* v. *Morrison* (16 Ind., 172); *Railroad Company* v. *Maine* (96 U. S., 499); *Shields* v. *Ohio* (95 id., 319) and *Clearwater* v. *Meredith* (1 Wallace, 25). The same view is taken in *People ex rel. New York Phonograph Company* v. *Rice* (57 Hun, 486 ; affirmed by Court of Appeals on opinion below June 16, 1891), where it was distinctly held that by the consolidation a new corporation was formed, and, further, that such new corporation was bound to pay the corporation tax now in question. The question is, therefore, settled, unless a distinction can be made from the fact that two of the constituent corporations were foreign corporations.

It might be said in the outset, that if the foreign corporation chooses to come into this State and take advantage of a statute of this State permitting it to do a certain act, it must do this on the conditions imposed. One of those conditions is that if two corporations do avail themselves of this consolidating statute, they must pay the organization tax. This was decided in the *Phonograph Case* (*ut supra*).

It might be said that the foreign corporation has made an agreement, under our statute, purporting to form with the domestic corporation a new corporation ; and that whether that old foreign corporation still has some existence in another State, at any rate the new corporation must pay the organization tax. And we might further remark that the consolidation act itself preserves a certain existence of the constituent corporations, so far as their creditors are concerned, yet such existence of the constituent corporations in

no way affects the liability of the new corporation to pay the organ-
ization tax, as was seen in the *Phonograph Case.* In that case,
notwithstanding the statute preserved to a certain extent the exist-
ence of the two domestic constituent corporations, yet the new
corporation was held liable to pay the tax. Therefore, whatever
might be held in regard to the existence in another State of
one of the constituent corporations in this case, still the new cor-
poration must pay for the privilege which it has undoubtedly
obtained of being a corporation here. If this State choses to enact
that, on payment of an organization tax, a foreign corporation
and a domestic corporation may unite into a domestic corporation
here, it cannot matter what may be the rights of that foreign
corporation in the State where it was formed. If it accepts the
privilege allowed it here, it must pay the tax, on payment of
which alone the privilege is granted. But it is urged by the
defendant that certain decisions of the United States Supreme
Court are fatal to plaintiff's claim. The case of *Nashua and
Lowell Railroad Corporation* v. *Boston and Lowell Railroad
Corporation* (136 U. S., 356) is cited. In that case the Nashua and
Lowell Railroad Corporation was incorporated in New Hampshire,
in 1838, by a special act. The Nashua and Lowell Railroad Corpo-
ration was incorporated by Massachusetts, in 1836, by a special act.

In 1838 the State of Massachusetts passed a special act declaring
that the stockholders of the New Hampshire corporation were
thereby constituted stockholders of the Massachusetts corporation,
and that the two corporations were thereby united into one. In
the same year the State of New Hampshire passed a special act
declaring that the two corporations, viz., the Massachusetts and the
New Hampshire, were authorized to unite the said corporations,
and that the property owned by either should be taken to be the
joint property of the stockholders of the two corporations. Subse-
quently, in 1857, this corporation entered into a contract with the
Boston and Lowell Railroad Corporation that their roads should be
worked and managed as one road, to be operated and managed
by one agent to be chosen by the votes of the directors of each road.
The plaintiff was the New Hampshire corporation, or, as called in
the opinion, the Nashua corporation. It alleged that it was duly
established as a corporation under the laws of New Hampshire. It

brought this action in equity in the Circuit Court of the United States for the district of Massachusetts. A plea in abatement was filed alleging that plaintiff was a citizen of Massachusetts. The plea was overruled. The same matter was set up in the answers. Replications were filed denying, in effect, the allegations respecting the acceptance of the acts, having for their object the union of the two corporations, and the allegations of such acceptance were entirely unsupported by the evidence or by anything on the record. A majority of the court held that the Circuit Court had jurisdiction, and the court remarked, that however closely two corporations of different States may unite their interest their separate identity is not lost. Now, we have carefully stated the facts of that case that no incorrect conclusions may be drawn from any remarks in the decision. Several things will be seen — first, that the two corporations (bearing the same name) were not shown to have accepted the acts of Massachusetts and of New Hampshire; second, that the act of New Hampshire does not purport to consolidate the two into one, but speaks of them still as two corporations; third, that the act of Massachusetts is to have no effect until the stockholders accept both of the acts. The statutes, therefore, in that case, are entirely different from the consolidation statute of this State, and no evidence was given that the stockholders had accepted these acts of the two legislatures.

The present case is not one where two corporations merely unite their interests and have the same directors. Here there is the creation of a new corporation, as was decided in the cases above cited.

And this distinction is very clearly pointed out in *Pennsylvania Company* v. *St. Louis, Alton, etc., Railroad Company* (118 U. S., 290), where the head note is: " When an existing railroad corporation organized under the laws of one State is authorized by the laws of another State to extend its road into the latter, it does not become a citizen of the latter State by exercising this authority, *unless the statute giving this permission must necessarily be construed as creating a new corporation of the State which grants this permission.*" And in the language of the court: " To make such a company a corporation of another State the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State or by the legislature." " It

does not thereby become such new corporation of another State until it *does some act which signifies its acceptance of this legislation and its purpose to be governed by it.*" If the case of the *Nashua and Lowell Railroad Company* (*ut supra*) was intended to overrule these views, it is probable that something of that nature would have been said in the opinion. Language could hardly be used more applicable to the present controversy. In the present case the words of the Consolidation Act distinctly express the creation of a new corporation. And the two constituent corporations have expressly accepted the legislation and claimed its benefits.

It is true that in *Railway* v. *Whitton* (80 U. S. [13 Wall.], 270), where the Chicago and North Western Railroad Company was incorporated in the State of Wisconsin and also in the State of Illinois, and the plaintiff, a citizen of Illinois, brought an action in the State court of Wisconsin against that company for an injury done in that State, and subsequently removed the action to the United States Circuit Court for Wisconsin, it was held that the removal was proper. The court said that *in Wisconsin* the defendant incorporated there was not a corporation or a citizen of any other State. Nor need we hold (because that question is not before us), that in the State of Illinois the Fort Wayne and Illinois Railroad Company may not still be sued in the Federal courts by a person not a citizen of that State.

A natural person, citizen of Illinois, may join with others and may form a corporation under the laws of New York. But he will still be a citizen of Illinois. So, even if it were held by the Federal courts, for the purpose of their jurisdiction, that that railroad was a citizen of that State, it would not follow that a corporation had not been formed in the State of New York. That is a question with which we have nothing to do. All that we have to decide is, whether, in this State, a new corporation was formed, and if so, what are the terms on which it was allowed the privilege of such new incorporation. And it will be observed that the cases principally relied upon by the defendant arose on the question of jurisdiction of the Federal courts ; that is, on the question as to the State which the corporation sued or suing was a so-called citizen.

In *Ohio and Mississippi Railroad* v. *Wheeler* (66 U. S. [1 Black], 286) is shown the growth of the doctrine, at first questioned, that a cor-

poration is, so far as the jurisdiction of the Federal courts is concerned, a citizen of the State where it is incorporated ; and that doctrine is placed on the ground that the legal presumption is that its members are citizens of that State. Of course, it is well known that such presumption is not true in fact. Just as it is well known that a corporation is itself an imaginary existence ; a legal fiction, which can have no real citizenship. The right to be a corporation is really only the right of several natural persons to act as one, so that the acts · done through agents shall not be the acts of these several persons, but of the imaginary body composed.of them. This right is conferred by the State. And there seems to be no reason in principle why two States should not confer the same right upon the same body of natural persons ; and why, in such case, the same corporation should not exist under the laws of two States. And it might present an interesting question for the Federal courts if the same persons were incorporated at the same time into an apparently identical corporation in each of two States, in which of those States it would be a citizen. We have not overlooked the language of the court in the case last cited, where, for instance, it is said : " The legal entity or person, which exists by force of law, can have no existence beyond the limits of the State or sovereignty which brings it into life." Yet, certainly, corporations do act and perform very important acts in States in which they were not incorporated. But, however that may be, the question which arose in that case was on the jurisdiction of the Federal courts ; and the court said that the suit in the corporate name was, in contemplation of law, the suit of the individuals who compose it. That is not so in any respect, except it be on the question of Federal jurisdiction. This present submission, for instance, is not the submission of the individuals who compose the defendant. But this matter is not important here. The question here is, whether this defendant is a corporation incorporated under a law of this State.

That the doctrine of cases above cited, that consolidation forms a new corporation, is not confined to the consolidation of two corporations incorporated by the same State is evident from the case of *Delaware Railroad Tax* (85 U. S. [18 Wall.], 206). There the Delaware and Maryland Company, incorporated under the laws of Maryland, and the Wilmington and Susquehanna Railroad Company, incorporated

under the laws of Delaware, were by subsequent acts of those States consolidated, and a tax was imposed on the new corporation. Again, in *Philadelphia and Wilmington Railroad* v. *Maryland* (51 U. S. [10 How.], 376), there was a consolidation of corporations of different States, and the court, at page 392, speaks of these companies as being thereby incorporated into one, which one was the plaintiff in error. Of course, as it was a plaintiff, it must have had the right to sue and be sued, which shows that the consolidated company was itself a corporation.

It is contended by the defendant that it is absurd that the capital stock of this defendant should be $30,000,000. But we have only to turn to the agreement of the consolidating companies, the fourth article of which says that the capital stock of said consolidated company shall be that amount; and the sixth article of which provides for the issue thereof. And it will be seen by that sixth article that on carrying the agreement into effect there will be no longer any capital stock of any company other than that of the present defendant, the New York, St. Louis and Chicago Railroad, No. 1, which, by the seventh article, owns all the property of the constituent companies. The defendant's counsel ask by what necromancy has *its* capital stock been increased from four and one-half million to thirty millions? But there has been no increase of the capital of any company. The present defendant is not the same corporation, with the New York, St. Louis, Chicago Railroad, No. 2, though it has the same name.

Some argument is made by defendant based on the assertion that these constituent corporations have also incorporated themselves into one corporation under the laws of other States, viz., Ohio, Pennsylvania and Indiana. The agreement for the consolidation in this State expresses an intention so to do. But we fail to find anything in the submission which shows that this has been done. We do not, therefore, know what is the fact. And it is not for us to determine what rights and liabilities may arise in other States, if consolidation has there taken place. The defendant must take the position that it is not a corporation; because by the fifth, sixth and seventh clauses of the submission the defendant is identified and is distinguished from the previous corporations of that same name. Therefore, the defendant is not the corporation called No. 3, and is

not that called No. 2. What is the defendant, then? Who has made this submission? It purports to be executed by a corporation under its seal and by the hand of its president. If defendant is not a corporation, then there is no party to the submission on one side, and the submission should be dismissed.

In the view we have taken this defendant is liable to pay the organization tax arising on the agreement of September 27, 1887. Under the Polhemus case above cited it is liable for the tax which the constituent company No. 2 should have paid on the agreement of August 15, 1887, and it is liable for interest on these amounts.

Judgment for plaintiff should be entered accordingly as prayed for in the submission.

MAYHAM, J.:

The concurrence of three things in the defendant's organization is essential to make the defendant liable for this tax.

*First.* It must be a corporation organized under a general or special law of this State.

*Second.* It must have capital stock divided into shares.

*Third.* It must carry on its operations wholly or partly within this State.

If the defendant by its organization embraces all the above requisites, then it comes within the provisions of chapter 143 of the Laws of 1886, as amended by chapter 284 of the Laws of 1887, which provides that any corporation * * * incorporated by and under any general or special law of this State, having capital stock divided into shares, shall pay a tax of one-eighth of one per cent on its capital stock into the treasury of the State.

The defendant is a corporation incorporated under the laws of this State pursuant to the provisions of chapter 917 of the Laws of 1869, as amended by chapter 685 of the Laws of 1881, by making, perfecting and filing agreements of consolidation in the office of the Secretary of State as provided by section 3 of the act of 1869, which declares that by the performance of those acts " said corporation, parties thereto, shall be deemed and taken to be one corporation," and by section 4 of that act such consolidated company is called the " new corporation."

It seems conceded that the aggregate stock of the old corporation

becomes the stock of such new corporation; it, therefore, has stock divided into shares. It is doing some of its business in this State, and is thus brought within that provision of the statute. It is true that some of its constituent parts are the corporations of other States organized under their laws. But if they by a valid agreement attach themselves to a corporation in this State and accept of a franchise under its laws, and thus by their charter become a corporation under the laws of the State of New York, there seems to be no reason why they should avail themselves of that privilege without being subject to the conditions under which the grant of that franchise is made. It is doubtless true that the original corporations by the act of consolidation do not thereby absolve their allegiance or obligations to their own State or the State by which they were chartered; but, in so far as they constitute by their consolidation a part of the new corporation under the charter which they have voluntarily assumed in this State, they become a new corporation organized under the laws of this State, and as such new organization must pay the franchise tax imposed as this condition of their charter.

LANDON, J. (dissenting):

The original New York, Chicago and St. Louis Railroad Company, organized in June, 1887, under the general railroad laws of this State, had a capital stock of $4,500,000. Its line of railroad was wholly within this State, extending from Buffalo to the State line between New York and Pennsylvania. Upon its organization it paid the tax of one-eighth of one per centum upon its capital stock, as required by chapter 143, Laws of 1886. That tax is imposed by said act upon every corporation, having capital stock divided into shares, "incorporated by or under any general or special law of this State." In August, 1877, this New York corporation, pursuant to the provisions of chapter 917, Laws of 1869, consolidated with a Pennsylvania railroad corporation, having a line of railroad extending across the State of Pennsylvania from its New York to its Ohio boundary, and forming a continuous line of railroad with that of the New York company.

The Pennsylvania company had a capital stock of $3,000,000, and the capital of the consolidated company was declared to be

$7,500,000. No franchise tax was paid upon the capital stock of the consolidated company. This company assumed the name of the New York, Chicago and St. Louis Railroad Company.

In September, 1887, the New York, Chicago and St. Louis Railroad Company, as thus enlarged, pursuant to the provisions of said act of 1869, consolidated with both an Ohio railroad company and an Indiana railroad company, one owning a line of railroad across the State of Ohio, and the other across the State of Indiana, which formed with the New York and Pennsylvania lines a continuous line of railroad from Buffalo to the State boundary line between Indiana and Illinois. This consolidated company assumed the name of the New York, Chicago and St. Louis Railroad Company, and declared its capital stock to be $30,000,000, which amount was the aggregate of the capital stock of all the constituent companies. No franchise tax was paid upon the capital stock of this consolidated company.

The plaintiff demands judgment in this action for the amount of the tax at the rate of one-eighth of one per centum upon $7,500,000, the capital stock upon the first consolidation, and at the like rate upon $30,000,000, the amount of the capital stock upon the last consolidation.

The contention of the defendant is, that upon neither consolidation was any company " incorporated by or under any general or special law of this State " within the meaning of chapter 143, Laws of 1886.

It was undoubtedly the purpose of the act of 1869 to form new corporations by the consolidation of constituent companies in the cases specified in the act, merging the old companies into the new, except so far as the act preserves the old companies in existence in order to uphold the rights of creditors.

Chapter 917, Laws of 1869, as amended by chapter 685, Laws of 1881, provides :

" Section 1. It shall and may be lawful for any railroad company or corporation, organized under the laws of this State, or of this State and any other State, and operating a railroad or bridge, either wholly within, or partly within and partly without this State, to merge and consolidate its capital stock, franchises and property with the capital stock, franchises and property of any other railroad com-

pany or companies organized under the laws of this State, or under the laws of this State and any other State, or under the laws of any other State or States, whenever the railroads or branches, or any part of the railroad or branches of the companies or corporations so to be consolidated, shall or may form a continuous or connected line of railroad, with each other, or by means of any intervening railroad bridge or ferry."

The second section of the act prescribes the methods to be pursued to effect such consolidation and merger and characterizes the result as a "new corporation."

The third section provides that the constituent corporations, when so merged and consolidated, "shall be deemed and taken to be one corporation;" and the fourth section declares that "all and singular the rights, privileges, exemptions and franchises of each of said corporations, parties to the same, and all the property, real, personal and mixed, and all the debts due on whatever account to either of said corporations, as well as all stock subscriptions and other things in action belonging to either of said corporations, shall be taken and deemed to be transferred to and vested in such new corporation."

The fifth section makes the "new corporation" liable for the debts of the old, except mortgages, but the old corporations "shall be deemed to continue in existence to preserve "the rights of creditors."

The sixth section limits the taxation upon the property of the new corporation to such of its real estate as is situate within this State, and to such proportion of its capital stock and personal property as the number of miles of the whole line of road bears to the number within this State.

We held, in *People ex rel. New York Phonograph Company* v. *Rice* (57 Hun, 486), that a corporation formed under chapter 960, Laws of 1867, by the consolidation of two domestic manufacturing corporations, each of which upon its separate organization had paid the organization tax, was required upon such consolidation to pay the tax under chapter 143, Laws of 1886; that a new corporation had been formed and the constituent corporations had ceased to exist. But both constituent companies were domestic corporations and jurisdiction over both was wholly in this State. The cases there cited of *Shields* v. *Ohio* (95 U. S., 319); *Railroad* v. *Maine* (96 id., 499), and

*Railroad* v. *Georgia* (98 id., 359), were cases of the consolidation of domestic corporations.

Such, also, was the character of the constituent companies in *Clearwater* v. *Meredith* (1 Wall., 25), and *McMahan* v. *Morrison* (16 Ind., 172). But it is also clear from the authorities that when a consolidation is effected of corporations of different States, under the enabling statutes of the respective States, no new corporation as an entirety is formed, but each constituent remains in severalty just as much the creature and creation of its parent State as it was before the consolidation.

The authorities upon this subject in the Federal and State courts appear to be uniform in the declaration of this result. (*Nashua, etc., R. R.* v. *Boston and Lowell R. R.,* 136 U. S., 356; *Farnum* v. *Blackstone Canal Co.,* 1 Sumner, 46; *Muller* v. *Dows,* 94 U. S., 444; *St. Louis, Alton and Terre Haute R. R. Co.* v. *Indianapolis and St. Louis R. R. Co.,* 9 Bissel, 144; *Penn. R. R. Co.* v. *St. Louis, etc., R. R. Co.,* 118 U. S., 290; *Racine, etc., R. R. Co.* v. *Farmers' Loan and Trust Company,* 49 Ill., 331; *Ohio and Miss. R. R.* v. *Wheeler,* 1 Black [U. S.], 286; *Quincy R. R. Bridge Co.* v. *Adams Co.,* 88 Ill., 615; *Chicago and N. W. R. R.* v. *Auditor-General,* 53 Mich., 91; *O. and M. Railway Co.* v. *People,* 123 Ill., 467; *State Treasurer* v. *Auditor-General,* 46 Mich., 224.) We are not cited to any authority holding otherwise.

The conclusion seems to result from well-established principles. Every corporation is the creation of its own State and cannot exist outside of it. It may, by the comity of other States, transact business or acquire property within them, but the entity or being which is created by law cannot transport its body beyond the State whose law gives it existence and sustains it. (*Ohio and Miss. R. R. Co.* v. *Wheeler, supra ; Plimpton* v. *Bigelow,* 93 N. Y., 592.)

No State can, by its legislation or otherwise, change the nature or character of a foreign corporation within the domicile of the latter. Two States have no power to unite in passing any legislative act; there can be no joint legislation in the sense that the two States, by uniting or concurring in legislative action, can achieve a single result which either separately could not do. (*Nashua R. R.* v. *Lowell R. R.,* and the cases *supra.*) The State of New York may authorize its corporation to consolidate with a Pennsylvania corpora-

tion so far as its business interests are concerned, but for it to declare that the union thereupon to result will be a new corporation, formed of the two constituents which shall no longer separately exist, is to attempt to change the nature and dissolve the existence of the Pennsylvania corporation, and replace it with a new corporation. This would be for it to attempt to extend its powers further than they can reach, and would, of course, be futile. Nor could it by its legislation bring the Pennsylvania corporation into the State of New York, or project the New York corporation into Pennsylvania. In the nature of things the concurring legislation of the two States only results in each State acting upon its own corporation and solely within its own territory, and hence there never can be one such power over both corporations as can pour or mingle them together, and thus make a fused or merged new corporation existing as an entirety in both States. It may be that each constituent would, as to third persons, when justice required it, be estopped to deny the creation of the new corporation, but such an estoppel would not impose this tax. The new corporation, to be taxable under the act of 1886, must have been organized under some act of this State, and if no act is competent to effect such an organization, the tax is not imposed. This State probably could authorize non-resident corporations to unite as corporators in forming a new corporation within this State, but that would be different from forming a new corporation by consolidation and merger. Consolidation and merger, and therefrom a new creation, imply power over each constituent in its own domicile. To enable each constituent to act in this State is only the exercise of domestic power.

In *Nashua, etc., Railroad* v. *Boston and Lowell Railroad* (136 U. S., 356), the Nashua Railroad Company was incorporated by the State of New Hampshire in 1835, to construct and operate a railroad in that State to its Massachusetts boundary. In 1836 the State of Massachusetts incorporated another company by the same name to construct a continuation in Massachusetts of the New Hampshire railroad. In 1838 both New Hampshire and Massachusetts passed acts to unite said corporations into one corporation. The Massachusetts act expressly made the stockholders of the New Hampshire company stockholders of the Massachusetts company, and the union

contemplated by the Massachusetts act was the enlargement of its corporation so as to merge the New Hampshire corporation into it. Thereupon a common stock was issued for the whole line, and one board of directors was provided which managed the entire line of railroad in both States for forty-five years. It was held that the identity of the New Hampshire corporation was neither destroyed nor merged with that of the Massachusetts corporation. The court said, page 373 : " The new corporation created by Massachusetts, though bearing the same name, composed of the same stockholders, and designed to accomplish the same purposes, is not the same corporation with the one in New Hampshire. Identity of name, powers and purposes does not create an identity of origin or existence any more than any other statutes alike in language, passed by different legislative bodies, can properly be said to owe their existence to both. To each statute and to the corporation created by it there can be but one legislative paternity." Again, page 382 : " Railroad corporations created by two or more States, though joined in their interests in the operation of their roads, in the issue of their stock, and in the division of their profits so as practically to be a single corporation, do not lose their identity ; that each one has its existence and its standing in the courts of the country only by virtue of the legislation of the State by which it is created. The union of name, of officers, of business and of property, does not change their distinctive character as separate corporations." The opinion reviews many of the cases above cited.

While it might be competent for the legislature of this State to impose the organization tax upon the capital stock of its own corporation, upon its participation in a consolidating agreement with foreign corporations, such is not the effect of the act of 1886. The tax is imposed upon the capital stock of a corporation organized under some law of this State, not upon an agreement to merge what is not capable of merger, not upon an agreement to make a new corporation by methods and constituents which no legislative power can make into a new corporation.

We conclude that judgment under the submission must be directed for the defendant, with costs.

*Judgment ordered for People on submission.*